[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
On October 25, 1996, appellant, Michael A. Reed, was involved in an automobile accident on I-75 in Wood County, Ohio. Police officers from the Bowling Green Police Department and troopers from the Ohio State Highway Patrol were dispatched to the scene. As a result of the events that occurred that day, appellant was charged with five offenses in the Bowling Green Municipal Court. Appellant pleaded not guilty to all of the charges.
The case proceeded to trial. One charge was tried to the court, and the remaining four charges were tried to a jury. The trial court granted a Crim.R. 29 motion made by appellant's trial counsel and dismissed one of the four charges presented to the jury, failure to wear a seat belt. The trial court found appellant guilty of the charge tried to the court, reckless operation of a vehicle, a violation of R.C. 4511.20. The jury found appellant guilty of the charge of driving under the influence, a violation of R.C. 4511.191(A). The jury found appellant not guilty of the charge of assault, and was unable to reach a verdict on the charge of resisting arrest.
The trial court accepted the jury's verdicts. The trial court granted a request from the state to dismiss the charge on which the jury was hung, resisting arrest. The trial court then sentenced appellant on the convictions for reckless operation and driving under the influence.
Appellant filed this appeal. He presents two assignments of error for our consideration:
"FIRST ASSIGNMENT OF ERROR
 DEFENDANT-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
"SECOND ASSIGNMENT OF ERROR
 THE CONVICTION OF DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE IT WAS NOT PROVED BEYOND A REASONABLE DOUBT THAT DEFENDANT-APPELLANT WAS OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL IN VIOLATION OF O.R.C. § 4511.19(A)(1)."
In support of his first assignment of error, appellant argues that his trial counsel was ineffective for several reasons. First, his trial counsel did not make a Crim.R. 29 motion for acquittal as to all of the charges against him when the state rested its case. Instead, his trial counsel only sought an acquittal on the charge of failing to wear a seat belt. Appellant asserts that the failure to seek acquittal on the charge of driving under the influence "was clearly prejudicial to appellant in that this is the only charge he was ultimately found guilty of by the jury." He contends that the evidence presented by the state to show that he was under the influence of alcohol was inconclusive and that the evidence should have been tested by a motion for acquittal.
Second, appellant contends that a Crim.R. 29 motion for acquittal should have been made by his trial counsel at the close of the presentation of evidence in his defense. He argues that his testimony that he requested a breath test to show he was not under the influence of alcohol at the time of the accident was unrebutted and says: "In light of this request, and the failure of the police officers to provide such a test to appellant, the State should have been challenged by a further Rule 29 motion and not permitted to rely on only field tests to establish appellant's guilt."
Third, appellant argues that his trial counsel should have objected to testimony from one of the state's witnesses, the nurse who evaluated appellant at the Wood County Justice Center following his arrest. Specifically, appellant argues that the nurse should not have been allowed to state that she believed he was under the influence of alcohol when she evaluated his medical condition. Appellant states that the nurse was testifying about observations she made of him "many hours after appellant's acknowledged drinking of any alcoholic beverages." He is essentially arguing that the nurse's testimony was not credible, since she evaluated him some five hours after he last admits to drinking an alcoholic beverage.
Finally, appellant argues that his trial counsel prejudiced his case by making concessions in the closing statement. The "concession" about which appellant complains was a statement by his trial counsel that the police officers and troopers understandably reached a conclusion that appellant's behavior at the scene of the accident showed appellant was under the influence of alcohol. The statement was made in the context of an argument that even though appellant acted as though he was intoxicated, he was actually suffering from head injuries.
The test used by Ohio courts to determine whether a valid claim of ineffective assistance of counsel exists is:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, followed.)" State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
Keeping this standard in mind, we have carefully considered appellant's arguments. We conclude, for the following reasons, that appellant has not met the test for showing ineffective assistance of counsel.
First, we cannot find that appellant's trial counsel's performance fell below an objective standard of reasonable representation when trial counsel chose to make a motion for acquittal on one charge, rather than on all five charges at the close of the state's case. While it is customary for many defense counsel to make a motion for acquittal on all charges as a matter of course to test the sufficiency of the state's evidence, we cannot say that in this case the failure to follow this course of action fell below a reasonable standard of representation. Appellant's counsel made a trial tactic choice to seek an acquittal on the one charge that the state failed to present sufficient evidence, failure to wear a seat belt. Appellant's trial counsel also made a reasoned choice not to pursue acquittal on the remaining charges since the state had presented sufficient evidence to withstand a motion for acquittal.
Second, we cannot find that the performance of appellant's trial counsel fell below a reasonable standard of representation when no motion for acquittal was made at the close of appellant's defense. The DUI charge for which appellant was convicted was filed pursuant to R.C. 4511.19(A)(1). R.C.4511.19(A)(1) does not require a showing of a particular blood alcohol level to show the individual is driving while under the influence of alcohol. Accordingly, appellant's testimony that he requested a breath test that was never administered was not sufficient by itself to assure that a motion for acquittal would be granted. The state had presented testimony from several witnesses about appellant's conduct and physical appearance at the time of the accident, and their conclusions that appellant was under the influence of alcohol.
Third, we cannot find that the choice of appellant's counsel not to object to the testimony of the nurse fell below a reasonable standard of representation. The record shows that the prosecutor laid a foundation to show the nurse had qualifications to give a professional opinion that appellant's actions were the result of intoxication and were not the result of a head injury. Appellant's counsel appropriately cross-examined the nurse and drew admissions from her that attacked the basis of her opinion. For instance, on cross-examination the nurse admitted the behavior of an intoxicated person and of a person suffering from a head injury can often be the same. She also admitted that she did not know when appellant consumed the alcohol she could smell on his person when he was at the jail.
Finally, we cannot find that the statements appellant's counsel made in closing statement fell below a reasonable standard of representation. Appellant's counsel did not concede that appellant was intoxicated. Instead, he argued that persons untrained in medicine, including the state troopers and the local police officers, could understandably interpret appellant's behavior at the scene of the accident and at the jail as proof of intoxication. Appellant's counsel then argued that even though it was understandable that the officers reached that conclusion, the facts in the case show that the conclusion was wrong. He argued that appellant's behavior was the result of a head injury; not intoxication. This argument was a valid defense strategy to the charges filed against appellant for intoxication related offenses.
Appellant has not shown that his trial counsel's representation fell below a reasonable standard of representation or that his case was prejudiced by the representation he received. Appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that his conviction for DUI is against the manifest weight of the evidence. Appellant argues that he should not have been convicted of DUI because he was never given a breath test, even though he asked for one at the scene of the accident. He states that the opinion testimony of the officers at the scene of the accident and of the nurse who observed him at the jail are not credible enough to sustain his conviction.
The Supreme Court of Ohio has stated:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
In addition, the Supreme Court of Ohio has said that it is the jury's function, not an appellate court's function, to decide which witnesses are credible. State v. Kehn (1977), 50 Ohio St.2d 11,14. Keeping these standards in mind, we have considered the following evidence from the record.
The first police officer to arrive at the scene of the accident was from the Bowling Green Police Department. The officer said appellant was wandering along the side of the highway. He walked up to appellant to learn if appellant had been driving and if he was injured. He testified that he immediately noticed a strong odor of alcohol coming from appellant. He said appellant told him he was not hurt. He talked with appellant about how the accident happened. He testified that appellant told him he lost control of his car on the entrance ramp to the highway when another vehicle hit his car, in a hit-and-skip accident. The officer could not find any signs of a hit-and-skip accident when he looked at appellant's car.
When he was asked why he thought appellant was drunk, he replied:
 "The indicators that I had received from the defendant upon my initial contact were the fact that he — the accident scene itself, how he had lost control, him indicating that it was a hit/skip accident. The strong odor of an alcoholic beverage on his person. And just his — his actions at the scene were not that of a person that you would normally be in contact with at that type of scene. They were different in the aspects of the way he was moving around, the way he was walking and stuff.
"* * *
 "He just kept moving away from us, and then he would walk closer out into traffic. Then he would come back over to us and everything.
"* * *
 "Normally the people we come in contact with that are involved in the accident, they really just want to get their information — get their information passed on to us so that they can get on and make arrangements to get transportation set up, and that kind of stuff. He did not appear to have these concerns at that time. He just seemed to be like wow, what has happened here, and that type of appearance to me."
Because of his suspicions that appellant was intoxicated, the officer conducted field sobriety tests on appellant. He testified that when he did a horizontal gaze nystagmus test, appellant's eyes bounced, an indictor that appellant was intoxicated. He also had appellant do a heel-to-toe test, and a one legged stand test. Appellant did not do either test correctly. The officer then arrested appellant for DUI. He read appellant the Miranda warnings, and put appellant in the back seat of his police cruiser.
The officer then went to assist a state trooper who was investigating the accident. His attention returned to appellant when a second state trooper at the scene told him appellant was banging his head against the rear passenger window in the police cruiser. He said appellant told him his neck hurt and he wanted medical attention. He took appellant out of the police cruiser and allowed appellant to lay on the grass on the side of the highway. He called for an ambulance. While they were waiting for the ambulance to arrive, appellant began to eat grass. The officers pulled up the grass around appellant's head, so appellant could not keep eating the grass.
The ambulance arrived, and appellant was put on a gurney. When the officer unlocked appellant's handcuffs, so that appellant could be tied to the gurney to keep him from falling during the trip to the hospital, appellant became violent. The ambulance personnel ran from appellant, and several officers struggled to control appellant. Appellant was eventually handcuffed again, after the second state trooper at the scene put appellant under arrest for assault and resisting arrest. The police officer said he did not see any bruises or any other sign that appellant was physically hurt.
Because the ambulance personnel refused to take appellant to the hospital following his violent behavior, the second state trooper who arrived at the scene took appellant to the Wood County Justice Center for booking and for medical evaluation. The second state trooper testified that appellant was kicking and struggling in the back seat of the cruiser all the way to the jail. When they arrived at the jail, appellant refused to leave the cruiser and had to be pulled from the back seat by several officers.
Appellant was put in a cell, where he began banging his head against the cell door. Fearful that appellant would hurt himself, the officers at the jail put appellant in a special restraint seat until appellant calmed down again. The trooper never saw any signs that appellant was physically injured.
The second state trooper testified that he has arrested hundreds of drunk drivers and has also encountered persons who were mentally incoherent. He said that in his opinion, appellant was intoxicated, rather than incoherent. He said appellant would alternately be coherent and converse intelligently with the officers and then would "work himself out" into uncontrolled behavior. He testified that his main purpose for seeking a medical evaluation of appellant was to be sure that appellant would not lapse into a coma or die due to high blood alcohol levels. He admitted on cross-examination that no tests were ever done to learn what appellant's blood alcohol level was that night.
The first state trooper to arrive at the scene of the accident testified that she did an investigation to learn how the accident happened. Based upon her investigation, she concluded that appellant had not followed the curve in a ramp to the highway. She said: "He didn't turn, he didn't put on brakes, he just went westbound on a north on southbound road." Instead of following the ramp, appellant drove straight across a grassy area onto I-75, where his westbound car was hit by oncoming traffic on a north and southbound road. She said there were no brake marks and no other signs that appellant did anything to try to prevent the accident from happening.
She said she believed appellant was intoxicated because of his physical appearance, including: "glassy eyes, bloodshot, flushed face, mumbling, incoherent, stumbling around." She said she did not see any signs in appellant's car that he had hit his head on a window in the car during the accident. She also did not see any sign of injury on appellant.
The nurse who evaluated appellant at the jail testified that she has been a nurse for twenty-three years. Her experience included caring for people who had head injuries. She did a neurological assessment of appellant at the jail after he calmed down and became cooperative. She said appellant initially refused to cooperate with her or to answer any of her questions.
As a result of the neurological evaluation, the nurse concluded that appellant did not have any head injury. She said "his neurological exam was normal, his pupil [sic] were equal and reactive, his hand grasps were equal. His vital signs were normal. His blood pressure was normal. His pulse was normal. He did not have any disurbances [sic] in his respiratory rate or character." Also, she saw no signs of bruising on appellant's head. She formed an opinion that appellant was intoxicated.
On cross-examination, she admitted she did not know when appellant last drank an alcoholic beverage before she saw him. She also admitted that the behavior associated with intoxication can be the same as the behavior of a person with a head injury. Finally, she said she could not conclusively state whether or not appellant had any neurological impairment.
Appellant presented the testimony of the manager/bar-tender from the nightclub in Bowling Green where appellant had been drinking alcoholic beverages before the accident. She testified that when appellant first came into the nightclub, he seemed "stone sober". She said appellant was in the nightclub for three to four hours. She testified: "I'd say in that 3 or 4 hours, I served him two Budweisers, a Purple Hooter, and a Kamakaze." She said: "A Purple Hooter consists of the one shot, and it has vodka and Chambord in it. It's a cordial. It's only 30 percent alcohol. A Kamakaze is vodka, Triple Sec, which is another low cordial, and the two beers."
The manager/bartender testified that she did not serve appellant any alcohol for the last hour that he was in the nightclub. She said that when he left she saw no signs that he was intoxicated. She said his eyes were not glassy or bloodshot, his speech was not slurred, and he did not walk unsteadily. On cross-examination, she said she did not know if appellant was in a condition to drive when he left the nightclub.
Appellant's father testified that he got a call from his son at about 11:00 p.m. asking him to come get his son from jail. He said his son did not sound intoxicated on the telephone. He drove to Bowling Green and got his son. He said his son did not appear or act intoxicated. He took his son home, and then went home himself. He said he was uneasy about leaving his son alone, but he is disabled and needed to get to his own home to take medication and to rest.
He said he went back to get his son and to take him to the hospital a few hours later. His son called and asked him to take him to the hospital because he was in pain and was vomiting blood. He waited while his son was examined. A doctor told him his son had a concussion and should not be left alone. He took his son home and stayed with his son until a friend came to his son's home to stay.
Appellant also took the stand and testified in his own behalf. He said he went to the Bowling Green nightclub to talk with a bartender there to see if he could learn the name of a witness. The witness had seen another driver hit appellant's parked car and leave the scene earlier in the week. Appellant testified that he had two beers, a Purple Hooter, and a Kamikaze to drink while he was at the nightclub. He said he was not intoxicated when he left the nightclub.
He said he went to a fast food drive through and got something to eat. He stopped at a gas station and put $5 worth of gas into his car. He also made a business call to California. He then drove onto the ramp where the accident happened.
He said that as he was on the curve, his car wheels hit loose gravel, causing him to lose control. He said he slid off the ramp and into the grass. He could see the oncoming traffic on the highway, so he tried to steer his car in the same direction as the traffic while hitting his accelerator. He said his axle snapped, and he could not control his car. He therefore drove onto the highway into oncoming traffic, where he was hit. He said he was wearing an automatic seat belt, but that he hit his head on the inside of his drivers side window.
He said he ran to the other vehicle to see if everyone was okay. Then he waited for the police to arrive. He said he told the police officer from Bowling Green that he was hurt and that he could not do the field sobriety tests. He also testified that he asked the officer to give him a breath test so he could prove he was not intoxicated.
He testified that he waited in the back seat of the police cruiser for fifteen to twenty minutes. He said: "Someone came in and got something out of the car, and I reached across, and sir, I said sir, I've been sitting here, I can't breathe. I said my eye hurts, I can't see out of the — my left eye, I need to go to the hospital, please get me out of here." He said his next memory is of laying face down, with grass and dirt in his mouth. He said he had excruciating pain from his eye, and it made him pass out. He said he has no memory of fighting with police officers, of screaming, of eating grass or of biting or kicking an officer.
He testified that his next memory was of waking up in the chair at the jail. He said he thought he was at the hospital. He said his father came to get him and to take him home. His father took him to his house, and then went home. Appellant said he put ice on his eye and head, and laid on the couch. He called his father about an hour and a half later, to ask his father to take him to the hospital. His father did take him to the hospital where appellant had x-rays and an MRI taken. He testified that the doctor at the hospital told him he had a concussion and a fracture in the bone just below his eye socket.
We have carefully considered the evidence, and cannot conclude that the jury lost its way when it decided that the more credible evidence showed that appellant was driving under the influence when the accident happened. We therefore do not find that appellant's conviction for DUI is against the manifest weight of the evidence. Appellant's second assignment of error is not well-taken.
After carefully reviewing the record and the arguments presented, we conclude that appellant was not prejudiced or prevented from having a fair trial. The judgment of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 7/1/92.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.