Defendant-appellee, Braden E. Reynolds, was tried by jury in the Clermont County Court of Common Pleas and found guilty of aggravated robbery in violation of R.C. 2911.01(A)-(3). Thereafter, the trial court imposed community control sanctions upon appellee which included (1) six months in jail; (2) intensive supervision for six months; (3) assessment and treatment at a counseling center; (4) participation in treatment as directed by the probation department; (5) payment of restitution in the amount of $1,050 to the victim's father; (6) completion of two hundred fifty hours of community service; (7) no contact with Brad Bohmer, Brian Counts, or Tim Corbett; (8) no consumption or possession of alcohol or presence on premises where alcohol sales are the primary activity; and (9) an 11:00 p.m. curfew. The community control sanctions were ordered to continue for a period of five years.
Subsequently, the state of Ohio filed a notice of appeal from the judgment imposing community control sanctions instead of a prison term, and thereafter, appellant filed a notice of cross-appeal challenging the propriety of any judgment and sentence. We affirm in part and reverse in part.
The operative facts which the jury apparently chose to believe show that on February 18, 1997, at approximately 3:00 p.m., fourteen-year-old Brad Bohmer, a freshman at Amelia High School, was walking to his home from a Kroger store where he had purchased model paint. Brad had a gold class ring, a gold necklace and a Starter jacket. As he rounded the store building, which was about a block from his home, Braden Reynolds, who was a senior at the high school, spun Bohmer around and told him to give up his ring, necklace and jacket.
At that point, the fourteen-year-old dropped the model paint and ran for his home, but Reynolds grabbed at the necklace and punched him in the face. Bohmer again ran for home, but Reynolds caught him and again hit him in the face. Upon abandoning his attempt to make it home, Brad returned to the store, but he was met there by Reynolds and one Tim Corbett. Corbett pushed Bohmer toward Reynolds, who again struck Bohmer in a manner that caused his lip to bleed and he was knocked to the ground.
At about the same time, another student, Brian Counts, along with two others, arrived upon the scene on bicycles. As Counts approached, he saw Reynolds and Corbett kick Brad in the chest and face, after which Counts told Reynolds to stop the beating. Bohmer was then able to run home, after which his parents took him to a hospital emergency room where he discovered that he had a broken nose.
In proper order, this court will initially consider the errors assigned by the defendant in his appeal, the first of which has been set forth as follows:
 Mr. Reynolds was denied a fair trial due to the ineffective assistance of his counsel.
This alleged error is apparently based entirely upon the failure of counsel to request a mistrial when a juror came forward at the close of the evidence to inform the trial court that he had overheard a witness, Detective Gregory Jasper, exclaim in the corridor that "he couldn't really remember whether there was blood in certain places, it was so long ago." However, the juror further informed the trial court that the other jurors had not heard the comment and that the comment would not affect his decision in the case.
At the time, the trial court observed that the comment, if anything, would be more favorable to the defense than to the prosecution, but the court invited either party to move for a mistrial. Neither party accepted the invitation, and in the application of an objective standard of reasonable representation, it hardly can be said that the failure of counsel to request a mistrial, under the circumstances, gives any more than token support to this alleged error. SeeStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. Furthermore, the record does not suggest that the tactical decision of counsel not to move for a mistrial had any material effect upon the outcome of the case. See State v. Lytle (1976),48 Ohio St.2d 391, death sentence vacated (1978), 438 U.S. 910,98 S.Ct. 3135.
Here, the incident relied upon by the appellant to show counsel's alleged deficient performance is wanting, and the possibility of prejudice from such incident, as noted by the trial court, was extremely remote. Hence, the first assignment of error is without merit.
The second assignment of error has been presented as follows:
 The trial court erred by not sustaining Mr. Reynold's [sic] motion for a mistrial.
In support of this alleged error, Reynolds asserts that the trial court erred in overruling a motion for a mistrial which was based upon claimed prosecutorial misconduct during closing arguments. Specifically, appellant alludes to the following excerpts from the record:
 PROSECUTION [MR. BROCK]: Ladies and gentlemen, if eyewitness testimony from the victim of the crime, corroborated by photographs depicting the injuries he sustained and medical records relating to the treatment he received and further elaborating on the injuries he sustained further corroborated by the testimony of a person that was involved with the defendant in the crime, further elaborated by an independent third party who just happens upon the situation and does the right thing, does what you and I hope our kids would do in that situation, if that is not enough to convict a predator like this gentleman for the conduct he exhibited back there on February 18 behind the Kroger store * * * [.]
 MR. TEKULVE: I am going to object to the inflammatory-type of argument, calling this young man a predator.
 MR. BROCK: It is argument, Judge.
COURT: Objection is sustained.
 MR. BROCK: If that type of evidence, ladies and gentlemen, is not enough to convict this man for what he did that day, then this system doesn't work. And you and I and our loved ones are not safe.
 MR. TEKULVE: I am going to object again, your honor, now he's getting into * * * [.]
* * *
 COURT: I will have to sustain the objection to that. Do you want me to make any kind of * * * [.]
 MR. TEKULVE: I would ask you to instruct the jury to disregard that particular type of argument.
 COURT: Is that all? Do you want me to tell them what type of argument?
 MR. TEKULVE: No, the record * * * I think for the record at this point, I am going to move for a mistrial.
 COURT: Well, the test is whether the defendant can receive a fair trial and I don't think the statement — statements made by Mr. Brock, taken in the context, have prevented the defendant from receiving a fair trial. So the motion for mistrial will be overruled.
* * *
 COURT: Ladies and gentlemen, the last portion of Mr. Brock's argument I will ask you to disregard. The argument or suggestion that your responsibility is to protect society is not a proper argument, and for this reason, I would ask you to disregard it.
* * *
 MR. BROCK: Tell the defendant that we will not tolerate his victimization of a fourteen-year-old, relatively defenseless * * * [.]
 MR. TEKULVE: There is an objection to this, your honor.
 COURT: The objection is overruled. This is argument, Mr. Tekulve. I don't find that the specific argument that is being made is objectionable.
By comparison with the prosecutorial misconduct claimed during closing arguments in a number of cases, the transgressions in the present case appear mild and unobtrusive, and a mistrial should not be ordered merely because some irregularity has intervened, unless the substantial rights of the defendant were adversely affected by the objectionable commentary. State v. Paxton (1995), 110 Ohio App.3d 305, citingTingue v. Ohio (1914), 90 Ohio St. 368. Furthermore, the granting or denying of a mistrial rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173.
Here, the prosecutor's veiled reference to social duty was improper, but it could have done little more than reinforce the preconceived notions of a typical juror. Accordingly, the second assignment of error is overruled.
The third assignment of error has been alleged as follows:
 The court erred by imposing restitution in the amount of $1,050.00 to the victim's father for the victim's economical loss.
Under R.C. 2929.18,[1] the trial court was authorized to order restitution, and ordinarily, evidence should be presented to show the amount of any loss to a reasonable degree of certainty. Here, however, the trial court, with the assistance of counsel for both parties, reviewed the losses which were traceable to the crime and due the victim, and arrived at the figure of $1,050. Upon remand of the case to the trial court after this appeal, the trial court, as well as the parties, may want to take another look at the arithmetical calculation which provided the total of $1,050, but in any event, it is fundamental that the defense cannot successfully raise this issue for the first time in this appeal. Here, the defendant not only failed to object, but actually participated in the possible inaccuracy of which he now complains. Hence, the third assignment of error is overruled.
Having determined that none of the assignments of error submitted by the defendant, Reynolds, are well made, this court will now turn its attention to the initial appeal wherein the state claims that "the trial court erred in imposing community control sanctions upon the defendant." Under the sentencing procedures effective as part of Senate Bill 2, this court cannot modify appellee's sentence unless we conclude the trial court's decision is clearly and convincingly unsupported by the record and/or contrary to law. R.C. 2953.08(G)(1)(a) and (d);State v. Garcia (Mar. 2, 1998), Clermont App. No. CA97-04-042, unreported, at 2; State v. Donnelly (Dec. 30, 1998), Clermont App. No. CA98-05-034, unreported, at 7. Having thoroughly reviewed the record, we find that the trial court's decision is clearly and convincingly unsupported by the record and, therefore, reverse the sentence of the trial court.
R.C. 2929.13(D) states as follows:
 * * * [F]or a felony of the first * * * degree * * *, it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code. Notwithstanding the presumption established under this division, the sentencing court may impose a community control sanction or a combination of community control sanctions instead of a prison term on an offender for a felony of the first * * * degree * * * if it makes both of the following findings:
 (1) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
 (2) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.
We find that none of the factors codified in R.C 2929.12(C) indicate this crime is less serious than the conduct normally constituting aggravated robbery. Specifically, the victim did not induce the offense, appellee did not act under any provocation, appellee clearly expected or should have expected to cause physical harm and there are no substantial mitigating factors to explain appellee's conduct. See R.C. 2929.12(C)(1) — (4).
In addition, pursuant to R.C. 2929.12(B)(1), the victim was only fourteen years old and, therefore, particularly vulnerable. The physical harm suffered, including the broken nose, was serious. R.C. 2929.12(B)(2). Aggravated robbery can be committed without any physical injury suffered by the victim. This crime cannot possibly be characterized as significantly less serious than the conduct normally constituting aggravated robbery.
Regarding the recidivism factors, appellee never appeared to display genuine remorse and/or responsibility for his crime. Even at the sentencing hearing, he characterized his actions as "just something kids do." R.C. 2929.12(E)(5). Appellee had a prior conviction as a juvenile. R.C. 2929.12(E)(1). Overall, an application of this record to the recidivism factors of R.C0 2929.12(D) and (E) does not demonstrate that appellant is less likely to commit future crimes.
Thus, we find the trial court's order of community control sanctions, rebutting the presumption of a prison sentence, clearly and convincingly unsupported by the record. Accordingly, the state's assignment of error is well taken. Upon remand, the trial court must impose a prison sentence within the mandatory range imposed by R.C. 2929.14.
The judgment of the common pleas court will be affirmed in part, reversed in part and remanded for resentencing.
WALSH and KERNS, JJ., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] Under former R.C. 2929.11(E), medical expenses could not be part of a restitution order because they did not constitute property damage. R.C. 2929.18, the current restitution statute, effective October 17, 1996, is broadly written and would encompass all the categories of damages, including medical expenses, in the trial court's restitution order. See, generally, State v. Frede (Nov. 24, 1997), Clermont App. No. CA97-02-011, unreported.