DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the April 30, 2003 judgment of the Williams County Court of Common Pleas wherein, defendant-appellant, John Carroll, was found guilty by the trial court of assault on a corrections officer. For the reasons that follow, we affirm the lower court's decision.
 {¶ 2} Appellant raises the following assignments of error:
 {¶ 3} "I. The trial court erred in finding defendant/appellant guilty of assault of a corrections officer in violation of Ohio Revised Code § 2903.13(A)(C)(2)(b), a felony of the fifth degree, as such finding was against the manifest weight of the evidence."
 {¶ 4} "II. Defendant/appellant was denied the effective assistance of trial counsel."
 {¶ 5} On November 20, 2002, appellant was indicted on one count of assault on a corrections officer stemming from an incident at the Corrections Center of Northwest Ohio ("CCNO") in Williams County. A plea of not guilty was entered and a bench trial took place on April 21 and April 22, 2003. Although defense counsel and appellant were made explicitly aware of the trial judge's affiliation as a board member for CCNO, appellant elected to proceed with his case in front of the trial court.
 {¶ 6} The following facts are undisputed. Julie Steingass was a Corrections Supervisor at CCNO. On November 3, 2002, Steingass was working as the supervisor in charge of the inmates in Unit C, including appellant. That evening, Steingass escorted the inmates in Unit C to and from dinner. As they returned to their unit, certain inmates began acting in an unruly and disruptive manner. Due in part to this behavior, Steingass informed the inmates that they would have to clean their cells once they returned. Appellant heard the announcement and became extremely irate. He apparently believed that he was being wrongly punished for the actions of others and expressed his concern by yelling and swearing at Steingass. After several verbal confrontations, Steingass decided to write-up appellant for a rules violation. Steingass then approached appellant's cell and asked him to sign a violation form. Again, appellant used abusive language and stated definitively that he would not sign anything. After the refusal, Steingass called other officers for assistance to aid in escorting or physically removing appellant from the unit. The officers approached appellant's cell located on the second level of the unit. It remains unclear from the record whether one of the officers or appellant himself actually opened the cell door as the officers approached. Nonetheless, appellant was apparently forced up against his cell door and then taken to the ground by the officers.
 {¶ 7} The state's testimony relied primarily on the four officers who participated in restraining and removing appellant from his cell. The prosecution witnesses testified almost universally that he was physically and verbally uncooperative. At one point during the fracas, appellant was temporarily able to free his right arm and strike Steingass in the face near her right eye. The blow was observed both by Steingass and Officer Shaffer.
 {¶ 8} Appellant presented the testimony of six witnesses including four inmates who were in Unit C at the time the incident occurred. One inmate, Allen Shiffert, testified that he observed one of the corrections officers strike Steingass in the face as they were trying to detain appellant. Appellant himself testified that he did not punch or elbow Steingass as he was being taken into custody.
 {¶ 9} In his first assignment of error, appellant maintains that his conviction is against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "`* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The rule of law in Thompkins applies equally to a matter tried before the bench or a jury. State v. Fisher, 6th Dist. No. L-02-1041, 2002-Ohio-7305, at ¶ 7.
 {¶ 10} Appellant argues that the trial testimony was exaggerated and contradicted. He points to several instances throughout the record where the testimony of Steingass appears to be inconsistent with the testimony of other witnesses. However, the alleged contradictions do not address the critical fact in this case. Both Steingass and Officer Shaffer testified unequivocally that they observed appellant strike Steingass. In fact, John Bailey, a defense witness, offered testimony consistent with the testimony of both officers. As he was watching the incident through his cell, Bailey testified that he heard one of the officers say, "* * * he hit me, he hit me * * *."
 {¶ 11} In addressing this critical point, appellant strongly suggests that this court should look to testimony of Allen Shiffert. Shiffert stated at trial that he observed one of the corrections officers strike Steingass in the face while attempting to restrain appellant. Beyond this definitive declaration, his testimony appears to have its own consistency issues. Shiffert stated that appellant did not swear at the officers when he was confronted. However, appellant himself admitted he was "yelling and cussing" at Steingass. Shiffert also estimated that he was approximately 100 to 200 hundred feet away from where the incident occurred. Further, Shiffert stated that there were three officers, not four, who took appellant into custody.
 {¶ 12} In our careful review of the record including the transcript of the trial and the applicable law, we cannot say that the trial court, acting as the factfinder, "lost its way and created * * * a * * * manifest miscarriage of justice." Accordingly, appellant's first assignment of error is not well taken.
 {¶ 13} In his second assignment of error, appellant contends that he was denied the effective assistance of counsel. The Supreme Court of Ohio has held that courts should apply a two part test to determine ineffective assistance claims. According to the Ohio Supreme Court:
 {¶ 14} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v.Bradley (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011, citing Statev. Lytle (1976), 48 Ohio St.2d 391; Strickland v. Washington
(1984), 466 U.S. 668.
 {¶ 15} As the United States Supreme Court noted inStrickland, "The object of an ineffectiveness claim is not to grade counsel's performance." Strickland, 466 U.S. at 697. A trial counsel's choice of tactics must be given deference. Statev. Nobles (1995), 106 Ohio App.3d 246, 276. The court must defer to the strong presumption that counsel's performance falls within the wide range of reasonable professional performance. Bradley,42 Ohio St.3d at 142. Even if counsel's performance falls outside the objective standard of reasonable representation, the court shall not reverse unless counsel's ineffectiveness resulted in prejudice. Id. In order to show prejudice warranting reversal, the defendant must show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceeding would have been different. Id.
 {¶ 16} Here, appellant maintains that he was denied affective assistance of counsel on two accounts. First, trial counsel failed appellant by allowing the matter to be heard by the trial judge acting as the trier of fact. Second, appellant argues that trial counsel failed to, as a basis for a defense, determine whether any of the corrections officers had a history of violent confrontations. Upon review, we conclude that both of appellant's allegations of ineffective assistance of counsel concern the tactical strategy of counsel.
 {¶ 17} Before trial, because of the specific facts involved in this case, the judge explained to both counsel and to appellant that he was a member of the Board at CCNO. Appellant and counsel both agreed to proceed with their case despite this fact. We must defer to the strong presumption that trial counsel's strategy falls within the wide range of professionally reasonable performance. Bradley, 42 Ohio St.3d at 142. The judge's affiliation with CCNO in a leadership capacity has little impact in a determination of fact where the alleged incident coincidently occurred on CCNO grounds. Further, assuming trial counsel's performance does in fact fall outside the scope of being professionally reasonable, it is not reasonably probable that a different outcome would have resulted with a different judge or even a jury. It cannot be viewed that counsel's tactical decision impeded on appellant's right to effective assistance of counsel.
 {¶ 18} Appellant also maintains that trial counsel failed to request and review records relative to the possible violent history of the corrections officers. As appellant admits in his brief, it would be speculation as to what the records may have revealed. Accordingly, we cannot say that had counsel pursued this defense, a reasonable probability exists that the outcome of the trial would have been different. Appellant's second assignment of error is found not well taken.
 {¶ 19} On consideration whereof, we find that appellant was not prevented from having a fair trial and the judgment of the Williams County Court of Common Pleas is affirmed. Costs of this case are assessed to the appellant.
Judgment affirmed.
Handwork, P.J., Pietrykowski, J. and Singer, J., concur.