THE STATE OF OHIO, APPELLEE, *v.* LYTLE, APPELLANT.

392

(No. 76-143—Decided December 27, 1976.)

*Mr. Nicholas A. Carrera,* prosecuting attorney, and *Mr. Stephen K. Haller,* for appellee.

*Messrs. Cox & Brandabur* and *Mr. James F. Cox,* for appellant.

I.

CELEBREZZE, J. In propositions of law Nos. 1, 2 and 3 appellant alleges he was denied a fair trial and substantial justice due to the ineffective assistance of his trial counsel. Appellant's claim should be viewed in the light of an unusual series of events which occurred prior to the date set for trial.

Lytle plead not guilty to all charges on October 2, 1974. On that date he was represented by attorney Larry B. Morris, who had been appointed on September 23, 1974. On October 18, 1974, Morris filed motions to suppress appellant's statements and certain physical evidence. On October 25, 1974, attorney Rodney D. Keish filed motions for a change of venue and a continuance on behalf of the appellant. At the hearing of these motions on October 29, 1974, Morris requested the court's permission to withdraw from the case. Permission was granted when appellant indicated that he preferred Keish as his counsel. Morris, who had spent in excess of 50 hours on the case at that time, agreed to comply with the court's order that he turn over the contents of his case file to Keish.

Summarizing the above, it is apparent that Keish began formal participation in the defense effort on October 25, 1974. From that date, Keish had 13 days before the juror selection process began, and 21 days before the state presented its evidence, to prepare his case. It will also be recalled that Keish had the benefit of more than 50 hours of work put in by his predecessor on the case.

Appellant's present counsel claims that Keish was in-

experienced, and points out certain actions and inactions which counsel now avers illustrate incompetency requiring a reversal. In particular, appellate counsel alleges the following to be errors committed by Keish:

(1) Counsel conveyed to appellant a false impression he could win, thus destroying any chance to plea bargain;

(2) Inadequate investigation by counsel, due primarily to the withdrawal of former counsel nine days prior to *voir dire;*

(3) Counsel did not have a proper grasp of the law, especially in regard to discovery procedure;

(4) Counsel rested without putting on any evidence; and

(5) The closing argument was incompetent because counsel argued defenses without first presenting evidence to support those defenses.

The phrase ''effective assistance of counsel'' is a term of art. Courts are, generally, reluctant to enunciate specific prophylactic rules of conduct for defense counsel. Beginning with the polestar decision in *Powell* v. *Alabama* (1932), 287 U. S. 45, there has developed a plethora of case authority on the meaning of ''effective and substantial aid.'' *Powell,* at page 53. The ''farce, or a mockery of justice'' test[1] has gradually been rejected, with the United States Court of Appeals for the Sixth Circuit now requiring that counsel render ''reasonably effective assistance.'' *Beasley* v. *United States* (C. A. 6, 1974), 491 F. 2d 687, 696.

This court has recently announced, in *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 79, that:

''In formulating a test for effective counsel pursuant to the Fifth, Sixth and Fourteenth Amendments, and Sections 10 and 16 of Article I of the Ohio Constitution * * *, we hold the test to be whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done.''

In addition, we held that ''[a]pplication of the test,

[1] *Williams* v. *Beto* (C. A. 5, 1965), 354 F. 2d 698, 704. This test can be traced back to *Diggs* v. *Welch* (C. A. D. C., 1945), 148 F. 2d 667, 669, certiorari denied, 325 U. S. 889.

396

like the application of the exclusionary rule, must be on a case-to-case basis." *Hester* at page 80. We concluded by noting that the Pattern Rules of Court and Code Provisions, based upon the A. B. A. Standards for Criminal Justice by Wilson, for the Committee on Implementation of Standards for the Administration of Criminal Justice, and the A. B. A. Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services, and Standards Relating to the Defense Function might be helpful to the trial court in deciding what is fair and adequate representation.

Appellant herein has structured his evaluation of Keish's performance in the light of those A. B. A. standards. Appellant claims that the assistance of his trial counsel did not meet the standards of skill set forth in those pattern rules, and therefore argues that he was denied competent counsel.

Although the A. B. A. standards have been cited in over 4,000 appellate decisions and codified in part in various codes of legal responsibility, they do not constitute the law of this state.[2]

We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the *best of available practice* in the defense field. There are many attorneys who fail to use the best available practices, yet relatively few who are found to be incompetent.

When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth

[2]"The standards themselves—17 volumes and a compendium covering every phase of the criminal trial—were developed over a span of nine years by practicing lawyers, judges, and scholars. The final product is a distillation of what was considered the *best available practice in each stage* of the proceeding—from arrest through post-conviction appeal." (Emphasis added.) Pattern Rules of Court and Code Provisions (Rev. Ed. 1976), at page vi.

Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.

On the issue of counsel's effectiveness, the appellant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See *Vaughn* v. *Maxwell* (1965), 2 Ohio St. 2d 299; *State* v. *Williams* (1969), 19 Ohio App. 2d 234.

On the issue of prejudice, there is no Ohio precedent, and the federal courts are in disagreement as to who must bear the burden of proof.[3] The weight of authority places the initial burden upon the appellant since "[u]nlike a constitutional violation actually caused by the state, such as an illegal search and seizure or a coerced confession, ineffective assistance of counsel is a result of the volitional acts of one charged with representing the defendant. To impose automatically the initial burden of proof on the state * * * would penalize the prosecution for acts over which it can have no control." *McQueen* v. *Swenson* (C. A. 8, 1974), 498 F. 2d 207, 218.

In the case at bar we find it unnecessary to determine upon whom lies the burden of proving prejudice, since we hold that appellant has not established that his counsel was ineffective. Specifically, we note the record reveals that appellant had decided to exercise his constitutional right to a trial on the charges in the indictment prior to the time when Keish replaced Morris. Appellant does not here contend that Morris was incompetent.

We also disagree with appellant's contention that his trial counsel did not conduct an adequate investigation, and that Keish was unfamiliar with the discovery procedure. First of all, the appellant chose Keish to be his advocate, despite the fact that Morris had been appointed by the court and had expended a considerable amount of time in structuring a defense. Upon his resignation from the

[3]Compare *Coles* v. *Peyton* (C. A. 4, 1968), 389 F. 2d 224, certiorari denied, 393 U. S. 849; and *United States* v. *DeCoster* (C. A. D. C., 1973), 487 F. 2d 1197 (burden on the government) with *United States, ex rel. Green,* v. *Rundle* (C. A. 3, 1970), 434 F. 2d 1112, and *McQueen* v. *Swenson* (C. A. 8, 1974), 498 F. 2d 207 (burden on appellant).

defense effort Morris delivered his case file to Keish. Morris had conducted the usual discovery to that date, and thereafter Keish conferred with appellant concerning the case. Keish also filed a motion for a bill of particulars, and subsequently spent a day investigating the events surrounding appellant's arrest. We conclude that the charge of inadequate preparation is without foundation.

Appellant has argued that it was error for the defense to rest without putting on any evidence. We note that appellant had the benefit of a presumption of innocence. Appellant had the opportunity to be a witness in his own defense, but chose to exercise the constitutional privilege against self-incrimination. There is no indication in the record, nor does appellant's present counsel offer any suggestion, as to what evidence, if any, could have been presented at trial on appellant's behalf.

Finally, we find no fault with trial counsel's closing argument. At that time Keish attempted to argue the defense of accident, claiming that appellant had been inadvertently struck by the baseball bat. The following excerpt from the record illustrates that Keish did his best to establish this defense while cross-examining the state's key witness, David Arrasmith.

"Q. I want you to think real hard about this. When you got back to your house, did Lytle complain to you at all or did he show you a bump on the side of his head? Think hard on it.

"A. Not that I can remember.

"Q. And you don't remember touching his head?

"A. Yes, I think I remember that.

"Q. To feel the bump?

"A. Yes, I think he said he almost shot Charlie.

"Q. And was that because Charlie hit him upside the head with the baseball bat?

"A. I don't know if he hit him or not, but that's what he said."

Accordingly, we reject appellant's contention that he was denied a fair trial and substantial justice due to the quality of the assistance rendered by his trial counsel.

## II.

In his propositions of law Nos. 4, 5, 6 and 7, appellant argues that the trial court erred in overruling his motion to suppress evidence obtained during a search af his vehicle. At the time it was seized, Lytle's automobile was parked on a public roadway, in front of a house belonging to the parents of Charles White. Appellant first claims that the subsequent search was illegal because no search warrant was issued before the vehicle was seized. It is not disputed that a warrant was issued after the car was impounded, and no search was conducted until after the warrant was obtained.

Beginning with *Carrol* v. *United States* (1925), 267 U. S. 132, there has developed a line of decisions establishing that less stringent warrant requirements apply to the search and seizure of an automobile, as opposed to the search of private residences or offices. A factor underlying this development has been the exigent circumstances that exist in connection with movable vehicles. "* * * [T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable." *Chambers* v. *Maroney* (1970), 399 U. S. 42, 50.

When considering whether the lack of a warrant to seize a vehicle invalidates a later search pursuant to a warrant, we believe the *Chambers* case to be dispositive. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers*, at page 52. Appellant does not contend, and we are unable to conclude, that there was a lack of probable cause to search his vehicle. There existed a distinct possibility that a friend or relative of co-defendant White would remove the vehicle, or tamper with its contents. Because the same considerations of exigency and immobilization apply here, as

they did in *Chambers,* we reject proposition of law No. 4.

Appellant next argues, in the alternative, that evidence obtained during the search of his vehicle should be excluded since the search violated the Fourth Amendment proscription against general exploratory searches. The warrant here involved specified that the affiant sought to recover 102 packages of cigarettes, a pair of field glasses, an electric calculator and $200 in change taken from a juke box and a cigarette vending machine. The offenses which purportedly gave rise to the appellant's possession of these goods were the breaking and entering of a laundromat and a high school. However, the inventory listing the property seized discloses that although none of the specified items were found, the officers seized two baseball bats, a .25 caliber Colt pistol and an assortment of tools, including chisels, crowbars and a hacksaw.

We believe that the searching officers could reasonably have believed that the items seized were either the "fruits of crime" (the baseball bats), or "weapons or other things by means of which a crime has been committed or reasonably appears about to be committed" (the tools and the pistol). See Crim. R. 41(B). We therefore reject appellant's proposition of law No. 5.

In his proposition of law No. 6, appellant claims that the Greene County authorities improperly obtained the .25 caliber Colt pistol in violation of the directives in Crim. R. 41(D), since Perry County authorities delivered the murder weapon to Greene County authorities to use as evidence in the prosecution for murder. Crim. R. 41(D) provides, in pertinent part: "* * * Property seized under a warrant shall be kept for use as evidence by the court which issued the warrant or by the law enforcement agency which executed the warrant."

We believe the last sentence of Crim. R. 41(D) was intended to insure that the property seized under a warrant is not destroyed or otherwise misused. Appellant cites no authority which would support his narrow interpretation of the rule, and we feel that both policy and practical considerations militate against such an interpretation. We thus find no merit in this proposition.

In proposition of law No. 7, appellant re-argues a factual dispute. It is his contention that a Perry County deputy sheriff seized his automobile in Muskingum County. He then concludes that the deputy was outside the territorial jurisdiction of the Perry County court which issued the search warrant.

The record reveals that the seizure was made in Roseville, a town which straddles the Perry County—Muskingum County line. In addition, the seizure was made before the search warrant was issued, due to the presence of exigent circumstances. It is not disputed that when the vehicle was searched it was within Perry County. We therefore reject this proposition of law.

### III.

In his proposition of law No. 8, appellant asserts that the trial court erred in overruling his motion to suppress the statement in which he confessed to the murder of Wallace Archibald. We have already determined that there was no illegality in the seizure and subsequent search of appellant's automobile. Accordingly, we reject appellant's contention that the confession should have been ruled inadmissible as the "fruit" of this search.

### IV.

In proposition of law No. 9, it is argued that the trial court erred by allowing into evidence testimony relating prior bad acts or crimes committed by the appellant. Specifically, the trial court admitted in evidence a confession by the appellant and testimony by Arrasmith which contained references to burglaries and breaking and entering offenses allegedly perpetrated by the appellant and his accomplices on the day of the murder. The appellate court ruled that the above evidence was admissible because it was relevant to and an inseparable part of the sequence of events; the burglaries, the theft of the .25 caliber pistol, the murder, the flight to Perry County, the subsequent arrest and discovery of the gun. On this point we disagree with the appellate court decision.

Generally, the prosecution is forbidden to introduce initially evidence of the accused's bad character, unless

and until the accused gives evidence of his good character. Although character is not irrelevant, the danger of prejudice outweighs the probative value of such evidence. The danger of prejudice is at its highest when character is shown by other criminal acts, and hence the rule that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show a probability that the individual committed the crime on trial because he is a man of criminal character. See McCormick on Evidence 447 (2d Ed.), Section 190.

In Ohio, the purposes for which evidence of other criminal acts may be offered are enumerated in R. C. 2945.-59. That section provides as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

In discussing the application of R. C. 2945.59, this court noted, in *State* v. *Burson* (1974), 38 Ohio St. 2d 157, at page 158, that "* * * evidence of other acts of a defendant is admissible *only* when it 'tends to show' one of the matters enumerated in the statute and *only* when it is relevant to proof of the guilt of the defendant of the offense in question."

The present appeal concerns appellant's conviction on the charge of aggravated murder while committing kidnapping and aggravated robbery, and thus the question is whether the prosecution's "other acts" testimony tended to prove motive, intent, absence of mistake or accident, or scheme, plan or method, in committing the above-stated offense. The state argued, and the appellate court so held, that the testimony relating the burglaries was ad-

missible in that it tended to show appellant's scheme, plan or system.

In *State* v. *Curry* (1975), 43 Ohio St. 2d 66, this court had occasion to construe the "scheme, plan or system" language of R. C. 2945.59. The first of two general factual situations set out in *Curry* is comparable to the case at bar, that being the situation in which the "other acts" form part of the immediate background of the crime charged in the indictment. We held, at page 73, that "[i]n such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this sub-category * * * the 'other acts' testimony must concern events which are *inextricably related to the alleged criminal act.*" (Emphasis added.)

That situation is not present in this case. We believe that it would have been possible to prove that the appellant committed the aggravated murder without introducing testimony disclosing the burglaries. Because the "other acts" were not inextricably related to the crime charged in the indictment the lower court erred in admitting such testimony.

We consider then whether this error requires the reversal of the guilty verdict, or whether it may be termed harmless. In order to hold error harmless, this court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State* v. *Abrams* (1974), 39 Ohio St. 2d 53; *Chapman* v. *California* (1967), 386 U. S. 18.

In this appeal, we have reviewed a confession by appellant, in which he admits to having shot the victim in the head. At trial, testimony was given by David Arrasmith, an accomplice of appellant at the time of the murder. That testimony was substantially similar to appellant's confession, with Arrasmith giving a detailed account of how appellant kidnapped Archibald, took $44 from him at gunpoint, and subsequently shot him in the head on a desolate country road.

Upon consideration of the above evidence we believe it most unlikely that the "other act" testimony contributed in any noticeable degree to appellant's conviction for

the purposeful killing of Archibald. At worst, the testimony established that the appellant had stolen the murder weapon. We therefore find no reasonable possibility that the improperly-admitted "other act" testimony contributed to the appellant's conviction, and hold that the error committed was harmless beyond a reasonable doubt. In addition, we note that there was no objection or request to strike by trial counsel at the time this disputed testimony was elicited. Accordingly, proposition of law No. 9 is overruled.

## V.

In his proposition of law No. 10 appellant asserts that the prosecutor's closing argument was improper under the rule formulated in *Griffin* v. *California* (1965), 380 U. S. 609, in that certain comments had the effect of penalizing appellant for exercising his Fifth Amendment privilege against self-incrimination.

We find no fault with the state's closing argument. The comments by the prosecution did not focus attention on the silence of the appellant, but rather reminded the jury that the state's case had not been rebutted. Moreover, the trial court instructed the jury that appellant's failure to testify should not be considered for any purpose. Therefore this proposition of law is without merit.

## VI.

In his final proposition of law, No. 11, appellant characterizes the death penalty as cruel and unusual punishment; and thus in violation of the Eighth and Fourteenth Amendments to the United States Constitution. We have determined, in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, that Ohio's capital punishment legislation is constitutional, and hence we disregard this last contention.

## VII.

No error prejudicial to the appellant having been found, we hereby affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, W. Brown and P. Brown, JJ., concur.