OPINION
{¶ 1} Defendant-appellant Brian K. Smith appeals from his conviction and sentence for rape, kidnapping, and gross sexual imposition. The events that form the basis for the indictment against Smith occurred in both Montgomery County, Ohio and in Greene County, Ohio.
 {¶ 2} On September 4, 2003, the State of Ohio filed an indictment against Smith in which he was charged with twenty counts of rape, twenty counts of kidnapping, and twenty counts of gross sexual imposition. On July 9, 2004, Smith entered a guilty plea with respect to five counts of rape, five counts of kidnapping, and five counts of gross sexual imposition for crimes which occurred in Montgomery County. On the same date, Smith pled guilty to the same type and number of counts for crimes which occurred in Greene County during a separate period of time. In return for Smith's guilty pleas, the Greene County prosecutor dismissed the remaining counts in the indictment and agreed to remain silent at sentencing.
 {¶ 3} The trial court sentenced Smith to life in prison for the rape counts, nine years for each of the kidnapping counts, and four years for each count of gross sexual imposition. The sentences for kidnapping and gross sexual imposition were to be served concurrently with the life sentence. As a result of the conviction, the court labeled Smith an aggravated sexually oriented offender.
 {¶ 4} In the instant appeal, Smith submits three assignments of error for review by this Court. In his first assignment, Smith contends that the trial court erred when it overruled his motion to suppress statements made by him to police officers in which he allegedly confessed to the crimes.
 {¶ 5} In his second assignment, Smith asserts that he received ineffective assistance of counsel at the trial level. In support of this contention, Smith argues that his trial counsel's performance was deficient for the following reasons: 1) failure to challenge venue; 2) advising Smith to accept a plea which carried a definite life sentence; 3) failure to offer any mitigation on Smith's behalf at the time of sentencing; and 4) failure to challenge the sexual offender classification and raise the issue of notice with respect to that hearing.
 {¶ 6} In his third and final assignment, Smith contends that the trial court erred by failing to conduct a sexual offender classification hearing.
 {¶ 7} After a thorough review of the record, we find that the first and second assignments of error presented by Smith are without merit and are, thus, overruled. However, the trial court's failure to provide Smith or his counsel with notice of the sexual offender classification hearing constituted plain error, and said classification is hereby vacated and remanded to the trial court for a sexual offender classification hearing with proper advance notice of the hearing issued to the parties.
 {¶ 8} Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded.
 I {¶ 9} On August 19, 2003, Detective Brad Williams and Detective Kathleen Miller of the Trotwood Police Department traveled to Smith's place of employment in order to question him with respect to accusations of sexual abuse made by the complaining witness and her family. After the detectives located Smith, they drove him to the Trotwood Police Station for questioning.
 {¶ 10} After arriving at the station, Smith was placed in an interview room where he was questioned for approximately one hour by Detective Miller and Detective Kirk Keller. Detective Williams did not participate in the first interview of Smith. During this initial round of questioning, Detectives Miller and Keller informed Smith of his constitutional rights under Miranda and requested that he sign a form wherein he acknowledged, both verbally and in writing, that he understood his rights. However, Smith made no admissions during the first attempt at questioning him, and the two detectives left the interview room.
 {¶ 11} A short time thereafter, Detective Williams entered the interview room alone and attempted to question Smith. It is undisputed that Detective Williams did not read Smith his Miranda rights a second time nor did he obtain another waiver from him. During this second interview, Smith confessed and drafted several written statements admitting his guilt.
 {¶ 12} On the basis of the admissions, Smith was incarcerated and subsequently indicted for twenty counts of rape, twenty counts of kidnapping, and twenty counts of gross sexual imposition. On October 14, 2003, Smith filed a motion to suppress the statements he made to Detective Williams. A hearing was held on this matter on April 8, 2004. The trial court denied the motion on April 22, 2004. As noted above, on July 9, 2004, Smith pled guilty to a total of ten counts each for the charges of rape, kidnapping, and gross sexual imposition. The court also classified Smith as an aggravated sexual predator.
 {¶ 13} From his conviction, sentence, and classification, Smith appeals.
 II {¶ 14} Smith's first assignment is as follows:
 {¶ 15} "The trial court erred in denying defendant-appellant's motion to suppress."
 {¶ 16} In his first assignment of error, Smith contends that the trial court erred when it overruled his motion to suppress incriminating statements he made to Detective Williams. Smith argues that his constitutional rights were violated because Detective Williams did not re-advise Smith of his Miranda rights prior to a second interview wherein Smith confessed his guilt verbally and in written statements.
 {¶ 17} In State v. Condon (Nov. 3, 2000), Darke County App. No. 1510, 2000 WL 1643791, we stated the following:
 {¶ 18} "Because custodial interrogation is inherently coercive, incriminating statements which are the product of such questioning are not admissible unless Miranda warnings precede that questioning. Mirandav. Arizona (1966), 384 U.S. 346. Those warnings are indispensable in overcoming the pressures of custodial interrogation and insuring that the individual knows he is free to exercise his right to remain silent at that time. Id. This suggests that the warnings should be sufficiently proximate in time and place to any interrogation so as to preserve the relief from custodial pressures that the warnings are intended to create. State v. Butler (September 18, 1998), Montgomery App. No. 16852, unreported. When an individual to whom prior Miranda warnings were properly given is subsequently interrogated without being re-advised of his Miranda rights, the critical issue is whether that individual nevertheless remained aware of his rights at the time of the subsequent interrogation. Butler, supra.
 {¶ 19} "In making that determination, courts must consider the totality of the circumstances, including: (1) [T]he length of time between the giving of the first warnings and subsequent interrogation, * * * (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * * (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * * (4) the extent to which the subsequent statement differed from any previous statements; * * * [and] (5) the apparent intellectual and emotional state of the suspect. State v. Roberts (1987),32 Ohio St.3d 225, 232."
 {¶ 20} As the State correctly notes, the issue before this Court is whether Smith remained aware of his rights at the time of the subsequent interrogation performed by Detective Williams. Just prior to questioning Smith after arriving at the Trotwood Police Station, Detectives Miller and Keller properly administered the Miranda warnings to Smith at approximately 10:30 a.m. on August 19, 2003. Detectives Miller and Keller interviewed Smith for approximately one hour. Immediately after they concluded the first interview, Detective Williams interviewed Smith and obtained a confession without re-advising him of his rights. Although Detective Williams did not remind Smith of his constitutional rights, the amount of time that passed between the two separate interviews was too insignificant for Smith to have forgotten or lost an understanding of the waiver he signed. Further, Detective Williams testified that he was aware that Detective Miller had previously Mirandized Smith.
 {¶ 21} As in Condon, supra, the detective who advised Smith of his rights and first questioned him was not the same detective who later obtained the confession, but the location did not change and the questioning related to the same offense. Testimony was adduced at the suppression hearing that indicated that Smith was reluctant to speak with Detective Miller because of the nature of the offenses and the fact that she is a female officer. Lastly, we find nothing in the record to suggest that Smith was intellectually or emotionally impaired so as to affect his ability to understand his rights as they were presented to him by Detective Miller.
 {¶ 22} In light of the totality of the circumstances surrounding Smith's interview and subsequent confession, we conclude that the evidence fails to demonstrate that Smith was unaware of his constitutional rights when questioned by the detectives who initially took him into custody.
 {¶ 23} Smith's first assignment of error is overruled.
 III {¶ 24} Smith's second assignment is as follows:
 {¶ 25} "Defendant-appellant received ineffective assistance of counsel."
 {¶ 26} In his second assignment of error, Smith contends that he was denied effective assistance of counsel at the trial level. In support of this assertion, Smith cites the following arguments: 1) failure to challenge venue; 2) advising Smith to accept a plea which carried a definite life sentence; 3) failure to offer any mitigation on Smith's behalf at the time of sentencing; and 4) failure to challenge the sexual offender classification and raise the issue of notice with respect to that hearing.
 {¶ 27} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing State v.Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 28} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id.
 {¶ 29} "In the context of a guilty plea, this test requires a defendant to demonstrate `that counsel's performance was deficient and that, but for counsel's deficient performance, he would not have entered a guilty plea.'" State v. Bailey (Jan. 23, 2004), Montgomery App. No. 19736, 2004-Ohio-273, ¶ 9, citations omitted.
 {¶ 30} The arguments Smith submitted with respect to his claim for ineffective assistance of counsel will be addressed in the sequence presented in his brief.
A. Failure to Challenge Venue
 {¶ 31} Initially, Smith argues that his defense counsel provided ineffective assistance for failing to challenge venue. Smith attacks the indictment, stating that other than containing the addresses of the alleged offenses, no facts were provided to support venue in either Montgomery County or Greene County. Smith's argument is without merit.
 {¶ 32} Taken in the context of his guilty plea, Smith has failed to allege any facts or demonstrate in any way that but for defense counsel's failure to challenge venue, Smith would not have entered guilty pleas. As the State correctly notes, the facts properly support the conclusion that the designated counts were committed as part of a continuing course of criminal conduct in both Montgomery and Greene County, as defined in R.C. § 2901.12(H). The record reveals that the victim in this case was a minor female who was under the age of thirteen when the crimes occurred.
 {¶ 33} R.C. § 2901.12(H) states in pertinent part:
 {¶ 34} "when an offender, when part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima facie evidence of a course of criminal conduct:
 {¶ 35} "(1) the offenses involved the same victim, or victims of the same type or from the same group."
 {¶ 36} Moreover, defense counsel was provided with a discovery packet in the instant case which contained materials detailing the locations where said criminal conduct occurred. Venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case. State v. Headley (1983), 6 Ohio St.3d 475, 477, 453 N.E.2d 716, internal citations omitted. In light of the foregoing as well as the strong presumption that counsel's performance constituted reasonable assistance, Smith's counsel was not required to perform a futile act.
B. Advising Smith to accept a plea which carried a definite life sentence
 {¶ 37} Smith next contends that by being advised to forego a trial on the merits of the case and to accept a plea for a crime which carried a definite life sentence, he was denied effective assistance of counsel. We disagree.
 {¶ 38} The indictment against Smith originally included sixty counts. As a result of plea negotiations that number was reduced to thirty counts. More importantly, at the stage in the proceedings when the plea negotiations had taken place, the trial court had overruled Smith's motion to suppress. Thus, Smith's earlier confession would have been admitted into evidence and heard by a jury.
 {¶ 39} In the instant appeal, Smith argues that the worst case scenario would have been a loss at trial which still would have resulted in a life sentence. Rather than risk losing at trial as to all sixty counts in the indictment, Smith chose to plead to only thirty counts. Smith can point to no evidence in the record that he was coerced into entering into the plea. Conversely, the following exchange between the trial court and the appellant reflects that Smith fully understood the nature of his crimes and the requirements of his plea:
 {¶ 40} "The Court: And you're entering this plea voluntarily?
 {¶ 41} "A: Yes, sir.
 {¶ 42} "The Court: Has Mr. Swift (defense counsel) or anybody connected with the prosecutor's office, or anybody connected with the Court forced you in any way to do this?
 {¶ 43} "A: No, sir.
 {¶ 44} "The Court: This is your decision.
 {¶ 45} "A: Yes, sir."
 {¶ 46} Later, the trial court further questioned Smith regarding the rape counts for which he was entering a plea:
 {¶ 47} "The Court: Mr. Smith, did you hear and understand the facts that the Assistant Prosecutor read into the record?
 {¶ 48} "A: Yes, sir.
 {¶ 49} "The Court: Are those the facts to which you wish to enter a plea of guilty?
 {¶ 50} "A: Yes, sir.
 {¶ 51} "The Court: You're entering this plea of guilty because that is what you did, you are guilty?
 {¶ 52} "A: Yes, sir.
 {¶ 53} "The Court: Do you understand what the maximum possible punishment is the Court can impose for this offense?
 {¶ 54} "A: Yes, sir.
 {¶ 55} "The Court: What is that, sir?
 {¶ 56} "A: Life.
 {¶ 57} "The Court: Do you understand that that is the mandatory requirement?
 {¶ 58} "A: Yes, sir.
 {¶ 59} "The Court: And do you understand what the possible maximum fine is that [the] Court can impose for this offense?
 {¶ 60} "A: Yes, sir.
 {¶ 61} "The Court: What is that?
 {¶ 62} "A: $55,000.00.
 {¶ 63} "The Court: $500,000.00.
 {¶ 64} "A: All right.
 {¶ 65} "The Court: Understanding that the possible maximum punishment is mandatory life imprisonment and $500,000.00 fine, do you still wish to go forward with your plea?
 {¶ 66} "A: Yes, sir."
 {¶ 67} In light of the above responses, Smith clearly acknowledged the nature of his crimes and the punishment such crimes would entail when he agreed to plead to the rape counts. Thus, we find that Smith's actions in accepting the plea were not the result of ineffective assistance of counsel.
C. Failure to offer mitigation on smith's behalf at time of sentencing
 {¶ 68} Smith argues that defense counsel's performance was rendered deficient by his failure to offer any mitigation on Smith's behalf at the time of sentencing. We disagree.
 {¶ 69} As the State notes, given the nature and circumstances surrounding the offenses for which Smith was charged, defense counsel's choice to remain silent while his client was sentenced can be viewed as a tactical decision. As the Supreme Court stated in State v. Tibbetts
(2001), 92 Ohio St.3d 146, 749 N.E.2d 226, "we must be highly deferential to counsel's performance and will not second-guess trial strategy decisions." Other than offering conclusory arguments with respect to how counsel's silence at sentencing may affect him in the future, Smith fails to demonstrate that but for counsel's performance, he would not have entered a guilty plea. Thus, we cannot conclude that counsel's tactical decision fell below a reasonable standard of representation.
D. Failure to challenge sexual offender classification and/or raise issue of notice with respect to that hearing
 {¶ 70} Smith's last argument regarding his assignment of ineffective assistance is that his trial counsel failed to challenge Smith's classification as an aggravated sexual offender and did not raise the issue of notice of the hearing during the sentencing portion of the proceedings.
 {¶ 71} Given our disposition with respect to Smith's final assignment of error below, we find that Smith's last claim of ineffective assistance to be rendered moot.
 {¶ 72} Smith's second assignment of error is overruled.
 IV {¶ 73} Smith's third and final assignment is as follows:
 {¶ 74} "The trial court erred by failing to conduct a sexual offender classification hearing."
 {¶ 75} In his final assignment of error, Smith contends that the trial court erred when it failed to conduct a sexual offender classification hearing. Smith essentially argues that the trial court committed plain error when it failed to give him notice that he would be classified as an aggravated sexual offender during the sentencing hearing. We agree.
 {¶ 76} R.C. § 2950.09(B)(2) states in pertinent part:
 {¶ 77} "(2) Regarding an offender, the judge shall conduct the hearing required by division (B)(1)(a) of this section prior to sentencing and, if the sexually oriented offense for which sentence is to be imposed is a felony and if the hearing is being conducted under division (B)(1)(a) of this section, the judge may conduct it as part of the sentencing hearing required by section 2929.19 of the Revised Code. * * * * The court shallgive the offender or delinquent child and the prosecutor who prosecutedthe offender or handled the case against the delinquent child for thesexually oriented offense notice of the date, time, and location of thehearing. At the hearing, the offender or delinquent child and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender or delinquent child is a sexual predator. The offender or delinquent child shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender or delinquent child."
 {¶ 78} In State v. Gowdy (2000), 88 Ohio St.3d 387, 727 N.E.2d 579, the Supreme Court held that this notice requirement is mandatory, that failure to provide such notice constitutes plain error, and that notice of the sentencing hearing is not sufficient notice of the sexual offender classification hearing.[1] After a thorough review of the record, it is clear that while the trial court did provide notice of the plea and sentencing hearing held on July 9, 2004, the court did not provide the requisite notice of the sexual offender classification hearing which it conducted at the close of the sentencing hearing. Thus, the trial court committed plain error. Accordingly, Smith's classification as an aggravated sexual offender must be vacated, and he must be provided the opportunity "to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses." R.C. § 2950.09(B)(2).
 {¶ 79} Smith's final assignment of error is sustained.
 V {¶ 80} With respect to Smith's conviction and sentence, the judgment of the trial court is affirmed. However, Smith's classification as an aggravated sexual offender is hereby vacated and remanded to the trial court for proceedings in accordance with this opinion.
Wolff, J. and Grady, J., concur.
[1] The notice requirement for the sexual offender classification hearing was originally included in R.C. § 2950.09(B)(1) when the Gowdy
court issued its decision. R.C. § 2950.09 has since been amended by Am.Sub.S.B. No. 3, effective January 1, 2002, which moved the notice provision for the sexual offender classification hearing to R.C. §2950.09(B)(2).