OPINION
{¶ 1} Defendant-appellant Ernest D. Walker appeals from his conviction and sentence for one count of domestic violence, in violation of R.C. § 2919.25(A), a felony of the fourth degree. On April 5, 2005, Walker was arrested for domestic violence after Dayton Police *Page 2 
Officers were called to his residence on a report that he had attempted to cause physical harm to his live-in girlfriend, Loretta Walker[1] . Walker was indicted on May 4, 2005. On May 10, 2005, he entered a not guilty plea.
 {¶ 2} Walker filed a motion to dismiss the indictment on June 9, 2005. In a decision and entry filed on June 16, 2005, the trial court overruled Walker's motion to dismiss. Walker subsequently entered a plea of guilty on June 28, 2005.
 {¶ 3} On July 12, 2005, Walker filed a motion seeking to withdraw his guilty plea in which he claimed that the plea was ill advised and made "without sufficient forethought." A hearing was held on the motion to withdraw on January 6, 2006, and on January 17, 2006, the trial court filed its decision and entry overruling said motion. Walker was sentenced to a term of five years of community control supervision. On February 7, 2006, Walker filed a timely notice of appeal.
 I {¶ 4} Walker's first assignment of error is as follows:
 {¶ 5} "THE TRIAL COURT ERRED IN FAILING TO DISMISS THE INDICTMENT AGAINST APPELLANT, WHICH RESULTED IN A CONVICTION ON UNCONSTITUTIONAL GROUNDS."
 {¶ 6} In his first assignment, Walker contends that the trial court erred when it refused to dismiss the indictment against him for domestic violence in light of our holding in State v. Ward
(2006),166 Ohio App.3d 188, 849 N.E.2d 1076, 2006-Ohio-1407. In Ward, we held that *Page 3 
the provision in the domestic violence statute, R.C. § 2919.25, extending protection afforded by statute to "a person living as a spouse" violated the Defense of Marriage Amendment to the Ohio Constitution which became law on December 2, 2004. Thus, Walker argues that since we ruled that the statute he was convicted under is unconstitutional as applied to his case, the trial court erred when it overruled his motion to dismiss.
 {¶ 7} "A guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." State v. Fitzpatrick (2004),102 Ohio St.3d 321, 333, 810 N.E.2d 927, 2004-Ohio-3167; citing Menna v. New York(1975), 423 U.S. 61, 62, 96 S.Ct. 241. Therefore, a defendant who voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson (1973),411 U.S. 258, 267, 93 S.Ct. 1602.
 {¶ 8} In the instant case, however, Walker asserts that the State cannot convict him of domestic violence against his live-in girlfriend no matter how validly his factual guilt is established. "A plea of guilty to a charge does not waive a claim that judged on its face * * * is one which the State may not constitutionally prosecute ." Mennav. New York (1975), 423 U.S. at 63. We agree and hold that Walker's guilty plea does not bar his claim that he cannot be prosecuted under a section of the domestic violence statute that we have deemed to be unconstitutional in our decision in State v. Ward (2006),166 Ohio App.3d 188, 849 N.E.2d 1076, 2006-Ohio-1407.
 {¶ 9} Most recently, however, the Supreme Court of Ohio issued its decision in State v. *Page 4 Carswell (2007), — N.E.2d —, 2007-Ohio-3723, which overruled our decision in Ward and affirmed the constitutionality of R.C. § 2919.25. Specifically, the Supreme Court held that "the term `living as a spouse' as defined in R.C. 2919.25 merely identifies a particular class of persons for the purposes of the domestic-violence statutes. It does not create or recognize a legal relationship that approximates the designs, qualities, or significance of marriage as prohibited by Section 11, Article XV of the Ohio Constitution. Persons who satisfy the `living as a spouse' category are not provided any of the rights, benefits, or duties of marriage. A `person living as a spouse' is simply a classification with significance to only domestic-violence statutes. * * * R.C. 2919.25 is not unconstitutional and does not create a quasi-marital relationship in violation of Section 11, Article XV of the Ohio Constitution." In light of the Supreme Court's decision inCarswell, the trial court did not err when it overruled Walker's motion to dismiss the indictment against him.
 {¶ 10} Walker's first assignment of error is overruled.
 II {¶ 11} Because they are interrelated, Walker's second and third assignments of error will be discussed together:
 {¶ 12} "THE TRIAL COURT ERRED IN FAILING TO PERMIT APPELLANT TO WITHDRAW HIS PLEA OF GUILT BEFORE SENTENCING"
 {¶ 13} "APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION" *Page 5 
 {¶ 14} In his second assignment, Walker contends that the trial court abused its discretion when it overruled his motion to withdraw his guilty plea which he filed prior to being sentenced. Walker maintains that his counsel was ineffective by recommending that he plead guilty even though the evidence would suggest that the State's case was weak and that a strong probability existed that he would be acquitted.
 {¶ 15} Pursuant to Crim. R. 32.1, "a motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 16} "[A] pre-sentence motion to withdraw a guilty plea should be freely and liberally granted." State v. Xie (1992), 62 Ohio St.3d 521,527, 584 N.E.2d 715. However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. * * * The decision to grant or deny a pre-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Id, at paragraphs one and two of the syllabus. Thus, "absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed."Id. at 527, 584 N.E.2d 715. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 17} The standard for determining whether a trial court abused its discretion in denying a pre-sentence motion to withdraw a guilty plea has been enunciated as follows: *Page 6 
 {¶ 18} "A trial court does not abuse its discretion in overruling a motion to withdraw: 1) where the accused is represented by highly competent counsel; 2) where the accused was afforded a full hearing, pursuant to Crim. R. 11, before he entered the plea; 3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion; and 4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." State v. Priest (April 9, 2002), Greene App. No. 2001 CA 108, 2002-Ohio-1892, quoting State v. Peterseim (1980), 68 Ohio App.2d 211,428 N.E2d 863, paragraph three of the syllabus.
 {¶ 19} In the instant case, it is clear from the record that each prong of the standard set forth in Peterseim has been satisfied. Initially, it should be noted that the record reflects that the only prong of the Peterseim test that Walker argues was not satisified was the first requirement that he be represented by highly competent counsel. It is also worthy of note that Walker was made aware before and at the time of the plea hearing that it was likely that the trial court did not intend to impose jail time, but rather intended to grant him community control. Thus, Walker was aware that if he pled guilty that he would be immediately released from jail.
 {¶ 20} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant'sSixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citingState v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623, 627, vacated in part on other *Page 7 
grounds (1978), 438 U.S. 910, 98 S.Ct. 3135.
 {¶ 21} The above standard contains essentially the same requirements as the standard set forth by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id. Thus, counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Id .
 {¶ 22} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Bradley, supra, at 143. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra, at 694.
 {¶ 23} The record reflects that defense counsel acted in a competent manner, and Walker did not receive ineffective assistance of counsel when he entered his guilty plea. Walker, however, argues that the following testimony from his trial counsel at the motion to withdraw hearing establishes that counsel left him with the mistaken impression that he could enter a guilty plea to get out of jail, and then withdraw said guilty plea at a later date:
 {¶ 24} "Q: Okay. And as part of the plea hearing, do you recall Judge Gowdown *Page 8 
advising the defendant that a guilty plea was a complete admission of guilt?
 {¶ 25} "A: I think the judge probably said that, yeah.
 {¶ 26} "Q: Okay. And do you recall whether or not Mr. Walker misunderstood that or indicated any hesitancy or misunderstanding as to what the judge was saying to him?
 {¶ 27} "A: Well, Ernest did hesitate at some point, as I recall. He did sort of step back and shaking his head [sic] . I talked to him a little bit and told him he didn't have to do this, that we could talk further maybe. But there was some kind of hesitancy. I'm not saying he didn't understand what the judge said, but there was some kind of hesitancy during the actual plea.
 {¶ 28} "Q: So you advised him that he did not have to plead if he did not want to.
 {¶ 29} "A: I think I said that. And I said also, you know, `If you have problems after we're done here, let me know.' You know, just — `I'm still available to you.'
 {¶ 30} "Q: Okay. Problems — what type of problems?
 {¶ 31} "A: Problems — like about pleading guilty to something. If he didn't want to do that, I told him to get in touch with me and we'll see what we can do.
 {¶ 32} * * *
 {¶ 33} "Q: But he did plead guilty.
 {¶ 34} "A: He did.
 {¶ 35} "Q: And he never told the judge he didn't understand what he was doing.
 {¶ 36} "A: No. I don't think he told the judge that.
 {¶ 37} "Q: Okay. Do you believe he understood what he was doing?
 {¶ 38} "A: Well, yeah, he understood all the words that were being used, the language. I'm not sure he understood the situation he was putting himself in. *Page 9 
 {¶ 39} "Q: Well, he understood that he was pleading guilty to an offense that he still insisted he did not commit.
 {¶ 40} "A: Right.
 {¶ 41} * * *
 {¶ 42} "Q: And isn't it a fact that the judge made an indication that it was a probation case?
 {¶ 43} "A: I think so. I'm pretty certain the judge didn't promise probation. But he-but I think he was going — he was likely to defer and told us he was likely to defer to the State's recommendation.
 {¶ 44} "Q: Okay. And the State recommended probation.
 {¶ 45} "A: Correct.
 {¶ 46} "Q: Okay. And isn't a fact that Mr. Walker was released that very day?
 {¶ 47} "A: I think so, yeah. Not positive.
 {¶ 48} "Q: Okay. And that was his motivation to get out of jail as soon as possible.
 {¶ 49} "A: You know, I would assume that probably was part of his motivation."
 {¶ 50} The above exchange does not support Walker's claim that his counsel implied that he could plead guilty to get out of jail and then simply withdraw the plea at a later date. Rather, defense counsel's testimony indicates that he told Walker that if he did not want to plead guilty, he did not have to proceed with the plea. Even though he may have been nervous and somewhat reluctant, Walker still chose to plead guilty. It is certainly not an uncommon phenomenon for a defendant to express hesitancy before pleading guilty.
 {¶ 51} Additionally, Walker suggests that his counsel was deficient because his *Page 10 
attorney's investigator uncovered evidence that may have been favorable to the defense, but this evidence was not brought to counsel's attention until shortly after Walker's guilty plea had been entered. However, when asked whether, after receiving the report, he would have advised Walker any differently regarding the guilty plea, defense counsel stated the following:
 {¶ 52} "Q: And would — if you'd had that information, would it have changed your recommendation to your client as to whether or not to enter a plea?
 {¶ 53} "A: Well, I always try to leave it up to the client. But I would have told him the State's case looks even weaker, like I said, based on this information."
 {¶ 54} Defense counsel's testimony does not establish that the investigator's report would have exculpated Walker, nor does it demonstrate that counsel became convinced of Walker's innocence after reading the report. For his own part, Walker fails to provide us with any explanation as to how the investigator's report would have influenced him to not plead guilty.
 {¶ 55} Moreover, defense counsel testified that he had seen and discussed all of the State's evidence handed over in discovery with Walker prior to his guilty plea. This is illustrated by the following exchange:
 {¶ 56} "Q: Okay. But would it be safe to assume that by the time Mr. Walker entered his plea on June 28, 2005, you had discussed the evidence that the State had in the case?
 {¶ 57} "A: Yes, that would be fair.
 {¶ 58} "Q: Okay. So this wasn't a situation where he didn't know what he was up against. He had a general idea what evidence the State had against him.
 {¶ 59} "A: Yeah. He would have had a general idea of what the witnesses had said. *Page 11 
 {¶ 60} Thus, Walker's assertion that his counsel's alleged deficient performance resulted in him making an involuntary guilty plea is not supported by the record. It is apparent that Walker was primarily motivated by a desire to get out of jail as quickly as possible and that he was willing to plead guilty to effectuate that end. There is nothing in the record to suggest that the representation offered by defense counsel was deficient in such a way that would require us to vacate Walker's knowing and voluntary guilty plea.
 {¶ 61} Walker's second and third assignments of error are overruled.
 III {¶ 62} All of Walker's assignments of error having been overruled, the judgment of the trial court is affirmed.
WOLFF, P. J. and BROGAN, J., concur.
[1] The couple merely share a last name. Ernest and Loretta were not married at the time of the alleged offense, nor have they ever been married. *Page 1