[Cite as *State v. Vento*, 2018-Ohio-1799.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| RANDY VENTO | : | Case No. 2017 AP 03 0006 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Appeals,
                             Case No. 2016 CR 06 0167

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      May 7, 2018

APPEARANCES:

For Plaintiff-Appellee

RYAN STYER
Prosecuting Attorney
MICHAEL ERNEST
Assistant Prosecuting Attorney
125 East High Avenue
New Philadelphia, OH  44663

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Aveue NW
Suite 808
Canton, OH  44702

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Randy Vento appeals the February 24, 2017 judgment of conviction and sentence of the Court of Common Pleas of Tuscarawas County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 2, 2016, Vento was seen by residents and law enforcement riding an orange bicycle, first in Dover, Ohio where he had contact with a Dover City police officer, and then in Mineral City, Ohio. In Mineral City, a resident found Vento lying on a picnic table in the city park. Later that afternoon, X.F, an 11 year-old Mineral City resident was walking home from a friend's house when he encountered Vento in the park near a wooded path.

{¶ 3}   Vento told X.F he was lost and asked for help. X.F refused. Vento stood up and started toward X.F and X.F ran. Vento caught X.F and dragged him into the woods. Vento removed his black hoodie and tied it around X.F's head so he could not see, removed X.F's clothing, and smashed his cell phone. Vento proceeded to rape and brutally beat X.F.

{¶ 4}   Meanwhile, X.F's mother had become concerned when X.F did not answer his phone and went looking for him with neighbors and other family members. X.F heard them calling for him, but each time he tried to call out, Vento shoved a stick in X.F's mouth to silence him. At some point Vento fled and X.F passed out.

{¶ 5}   Upon regaining consciousness, X.F crawled out of the woods. He was discovered by a neighbor naked, severely beaten and bloody, and with Vento's sweatshirt

still tied around his neck. Asked who had done this to him, X.F stated a black man wearing a black hoodie and green pants had grabbed him off the street. A reverse 911 call was issued to the Mineral City Area asking residents to notify law enforcement if they saw a man matching the description given by X.F.

{¶ 6}   Within minutes of issuing the reverse 911 call, a resident returned the call and stated a man matching the description had run out of the woods near the village park, and ran into her car in his haste. When deputies responded to the location, they found Vento shirtless and wearing green pants. He was taken into custody.

{¶ 7}   Tuscarawas sheriff's deputies searched of the area where X.F was found. Near the trailhead, an orange bicycle was found along with several personal items including hospital records bearing Vento's name and date of birth. Further into the woods they discovered a tree that appeared to have blood on it as well as some clothing which appeared to be bloody.

{¶ 8}   X.F was transported by ambulance to Akron Children's hospital with life-threatening injuries. He underwent multiple surgeries and tests during a 6-day stay. X.F advised medical personnel that Vento had raped him and therefore a rape kit was also collected. X.F's injuries included multiple abrasions and contusions to his face and body, multiple skull fractures, two fractured fingers, and deep lacerations to his face and mouth.

{¶ 9}   Later laboratory testing indicated that blood found on Vento's back belonged to X.F, and X.F's DNA was present in Vento's underwear. Testing on the hoodie recovered from around X.F's neck contained DNA from both X.F and Vento. Additionally, seminal fluid was present on the anal and perianal swabs from X.F's rape kit.

{¶ 10} In August 2016, the Tuscarawas County Grand Jury indicted Vento on one count of kidnapping with a sexual motivation specification, two counts of rape, one count of attempted murder, one count of felonious assault, and one count of tampering with evidence.

{¶ 11} The matter proceeded to a five-day jury on February 13, 2017, at the conclusion of which Vento was found guilty as charged. At a later sentencing hearing, after merging allied offenses as agreed to by the parties, the trial court sentenced Vento to an aggregate term of life without the possibility of parole. He was further classified as a Tier III sex offender.

{¶ 12} Vento then filed this appeal, and the matter is now before this court for consideration. He raises two assignments of error:

I

{¶ 13}"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT'S SUBSTANTIAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY ADVISING THE VENIRE OF THE MINIMUM AND MAXIMUM PENALTIES OF EACH OFFENSE IN THE INDICTMENT PRIOR TO BEGINNING APPELLANT'S TRIAL."

II

{¶ 14}"APPELLANT WAS DENIED A FAIR TRIAL DUE TO A VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN THAT COUNSEL FAILED TO NOTICE THAT A STATE'S WITNESS HAD NOT BEEN DULY SWORN IN, FAILED TO MAKE TIMELY OBJECTION THERETO, AND WAIVED APPELLANT'S RIGHT TO OBJECT."

I

{¶ 15} In his first assignment of error, Vento argues the trial court committed plain error when during jury selection, when it advised the venire of the possible penalties for each offense. While we agree that the trial court committed error, we find the outcome would not have been any different but for the trial court's comments.

{¶ 16} Vento did not object to the trial court's comments. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, Vento bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long*. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 17} Before the attorneys questioned any of the potential jurors, the trial court discussed with the venire the charges against Vento, the specifications, and the range of penalties for each offense. T. 40-43. The court then advised the venire at T 44:

> Now, ladies and gentlemen, I am telling you what these potential penalties are not because I'm suggesting that Mr. Vento is guilty of those crimes, but to give you an appreciation for the significance of your involvement in this trial and the implication of verdicts of guilty should the jury impaneled render them. So I don't want you to think that there's no prison term or that it's discretionary with the judge. You need to know what those sentences are so that you can

approach this with the level of seriousness and commitment to justice that I know you will if you're selected.

{¶ 18} The subject of punishment is not a proper jury consideration. R.C 2945.11, *State v. Rigor*, 8th Cuyahoga Dist. No. 76201, 2000 WL 1867401, (Dec. 14, 2000) *3. Nonetheless, we cannot say a manifest injustice occurred here as the evidence in this matter was exceptionally strong. Vento was seen by residents in the area of the crimes both before and after his attack on X.F. T. 364-367, 396-397. Forensic evidence, including the rape kit results, DNA testing on the hoodie Vento tied around X.F's head, Vento's underwear, and the fact that Vento had X.F's blood on his back inextricably tied Vento to the crimes. T. 567-568, 610-612, 564-566. Additionally, before the jury retired to deliberate, the trial court properly instructed the jury pursuant to R.C. 2945.11 that it could not consider the issue of punishment. T. 715. A jury is presumed to follow the instructions of the trial court. Pang v. Minch, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus.

{¶ 19} We therefore conclude that while it is error to inform a venire of the potential penalties a defendant may face, in this instance, we find no plain error.

II

{¶ 20} In his second assignment of error, appellant argues he was denied effective assistance of counsel. Specifically, appellant argues his counsel failed to object when the trial court did not administer an oath or affirmation to the child victim before accepting testimony from the victim. We disagree.

{¶ 21}  The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.  Appellant must establish the following:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
>
> 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 22}  Evid.R. 603 provides "* * *[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." The staff notes for Evid.R. 603 indicate the rule affords flexibility when dealing with a child witness.

{¶ 23}  On the day he testified in this matter, X.F was 11 years-old.  Before X.F testified, the trial court inquired of him:

\*\*\*

The Court: And [X.F], I understand you are how old today?

[X.F]: 11 sir.

The Court: You're going to be 12 soon?

[X.F]: Yes, sir.

The Court: All right. And you understand what it means to tell the truth.

X.F: Yes sir.

The Court: All right. And is it your promise today that you're going to tell the truth and answer the questions truthfully?

X.F: Yes sir.

The Court: Thank you.

{¶ 24} There is no particular formula required for administration of an oath. Evid.R. 603, staff notes. We find nothing objectionable in the trial court's administration of the oath to X.F. Because the oath was not objectionable, we conclude counsel was not ineffective for failing to object thereto.

{¶ 25} The second assignment of error is overruled.

By Wise, Earle, J.

Gwin, J. and

Baldwin, J. concur.


EEW/rw