OPINION
{¶ 1} Defendant-appellant Bryan Tackett appeals his May 16, 2005 conviction on one count of felonious assault, in violation of R.C.2903.11(A)(1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 20, 2005, at approximately 7:00 in the evening, Sherry Runyon was attacked, while walking home from a friend's house. At the time of the attack, Runyon had known appellant for approximately seven months. A few weeks prior to the attack, Runyon had borrowed $40.00 from the appellant and never paid him back. On the day of the attack, Runyon testified appellant chased her twice, but she managed to escape without injury.
 {¶ 3} Melanie Riley, a clerk at a local convenience store, testified she knew appellant for several years as a regular customer. A few days before the attack, appellant was in the convenience store, and told Riley he was upset with Runyon over the money, he believed she ripped him off, and he was going to "kick her ass."
 {¶ 4} A friend of appellant, Miranda Wood, testified at trial that just prior to the attack appellant told her he had been "ripped off of $40.00 by a white trash crack whore." She further testified, three days after the attack, appellant admitted to her he had an "incident with a white trash, crack whore" and he had "stooped to a new low."
 {¶ 5} Testimony at trial demonstrated the assailant was sitting across the street, when he saw Runyon approach. The assailant got out of a truck, ran across the street, and hit Runyon with a closed fist on her left cheek. He then fled the scene. At trial, Runyon identified appellant as the attacker, as did two witnesses, Laurie Albright and Lori Lambert.
 {¶ 6} Appellant was charged with one count of felonious assault, in violation of R.C. 2903.11(A)(1). Following a trial by jury, appellant was convicted of the charge.
 {¶ 7} Via Judgment Entry of May 16, 2005, the trial court accepted the jury's verdict and sentenced appellant. It is from that Judgment Entry appellant now appeals and raises the following assignments of error:
 {¶ 8} "I. WHETHER OR NOT THE APPELLANT'S CASE WAS PREJUDICED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL REVOLVING AROUND (1) FAILURE TO FILE A MOTION TO SUPPRESS REGARDING PHOTO IDENTIFICATION; (2) FAILURE TO MOVE FOR A MISTRIAL WHEN WITNESSES DID NOT REMAIN SEPARATED DURING THE TRIAL: (3) FAILURE TO MAKE A RULE 29 MOTION AT THE CLOSE OF THE STATE'S CASE AND (4) FAILING TO PRESENT ALL EVIDENCE FAVORABLE TO THE APPELLANT AT TRIAL.
 {¶ 9} "II. WHETHER OR NOT THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY REQUIRING HIM TO STAND TRIAL WHILE WEARING A STUN ARMBAND THAT WAS VISIBLE TO THE JURY.
 {¶ 10} "III. WHETHER OR NOT THE GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 11} In the first assignment of error, appellant argues he was denied the effective assistance of counsel at trial.
 {¶ 12} The test for ineffective assistance of counsel is set forth inState v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E .2d 373, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258, 111 L.Ed.2d 768. Appellant must establish the following:
 {¶ 13} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle (1976),48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 14} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 15} Appellant first asserts his counsel was ineffective in failing to file a motion to suppress the "photo identification" used to identify him as the assailant.
 {¶ 16} On cross-examination, Laurie Albright testified she saw a small truck sitting in a parking lot and witnessed the driver get out of the truck and walk over to the victim and hit her. Albright testified:
 {¶ 17} "Q. Okay. Now, you didn't identify Mr. Tackett before, did you?
 {¶ 18} "A. I didn't know him before.
 {¶ 19} "Q. I mean before today.
 {¶ 20} "A. I had never seen him. No, I had never seen. No, I had never seen him before.
 {¶ 21} "Q. Okay. So, the detectives involved in this case never asked you to try and identify him.
 {¶ 22} "A. The first time that I was asked to identify him was when I was at Mr. Moffit's (sic) office and he showed me a picture of him.
 {¶ 23} "Q. How many other pictures were in that group of pictures?
 {¶ 24} "A. I believe there was two.
 {¶ 25} "Q. And were they both pictures of Mr. Tackett?
 {¶ 26} "A. Yes."
 {¶ 27} "* * *
 {¶ 28} "Q. So, you were not ever given the opportunity to determine if this gentleman really looked like Mr. Tackett or was Mr. Tackett by picking him out of a lineup of people that looked like him.
 {¶ 29} "A. As for myself I wouldn't have had to, because I seen him when he hit her. When I seen the picture, I know it was him."
 {¶ 30} Tr. at 140-141.
 {¶ 31} Lori Lambert who witnessed the assault, testified at trial:
 {¶ 32} "Q. Okay. Now, were you ever asked to identify Mr. Tackett prior to today?
 {¶ 33} "A. Yes.
 {¶ 34} "Q. Was that with the Prosecutor?
 {¶ 35} "A. Yes.
 {¶ 36} "Q. And did he show you a photograph?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. Okay. Did he show you any other photographs other than pictures of Mr. Tackett"
 {¶ 39} "A. Just he wanted to know whether it all — where the assault took place.
 {¶ 40} "Q. I'm sorry. Let me make that a little clearer. Did he show you photographs of anyone else along with Mr. Tackett to see if you could choose him from a group of other gentlemen that might look similar to him?
 {¶ 41} "A. No.
 {¶ 42} "Q. Never did that?
 {¶ 43} "A. No.
 {¶ 44} Tr. at 250-251.
 {¶ 45} Appellant asserts the pretrial procedure used to identify him was unnecessarily and impermissibly suggestive; therefore, his counsel should have filed a motion to suppress the photo identification evidence. It appears appellant means to argue the court room identifications of appellant should have been suppressed, not the actual photo identification evidence, because the photo evidence itself was not admitted as evidence.
 {¶ 46} Upon review of the record and appellant's arguments we are not convinced the pretrial photo identification utilized by the prosecutor in preparation of trial, assuming arguendo it was unnecessarily suggestive, would have rendered the prosecution witnesses' in-court identifications of appellant inadmissible. An attorney will not be found ineffective for failing to raise an objection which would have been denied. Appellant has not demonstrated the outcome of the trial would have been different had his counsel moved the court to suppress the photo identification evidence.
 {¶ 47} Appellant further argues his counsel was ineffective in failing to move for a mistrial after he discovered two witnesses did not remain separate during the trial, and were seen having lunch together.
 {¶ 48} Again, appellant's argument is speculative, and he has not demonstrated the outcome of the trial would have been different but for counsel's actions. The trial court did not order the witnesses to remain separate, and the record does not disclose any discussion between the witnesses relating to the trial. Accordingly, appellant's argument is speculative. There is not a reasonable probability the outcome of the trial would have been different had trial counsel moved the court for a mistrial.
 {¶ 49} Appellant also asserts his counsel was ineffective in failing to move the trial court for acquittal following the presentation of the State's case. Appellant argues the State's case was riddled with inconsistencies and discrepancies of the witnesses.
 {¶ 50} Appellant only speculates the outcome of his trial would have been different had his counsel so moved the trial court. Again, an attorney is not ineffective for failing to raise an objection, which would have been denied. As discussed in our disposition of appellant's third assignment of error, infra, the evidence, when considered in a light most favorable to the State, would have resulted in the motion being denied.
 {¶ 51} Finally, appellant maintains his trial counsel was ineffective for failing to present all the evidence favorable to appellant. Appellant does not state what the evidence would have been; rather, appellant's arguments are vague and conclusory and outside the record.
 {¶ 52} The first assignment of error is overruled.
 II {¶ 53} In his second assignment of error, appellant asserts the trial court's insistence, without a hearing, he wear a stun armband created jury prejudice. Appellant does not cite in the record where he requested a hearing relative to wearing the armband. Furthermore, appellant does not demonstrate whether the jury conclusively saw appellant wearing the armband.
 {¶ 54} The decision whether to impose restraints upon a defendant in a criminal trial is left to the discretion of the trial court. When the facts and circumstances surrounding a defendant illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it. State v. Franklin (2002), 97 Ohio st.3d 1.
 {¶ 55} The following exchange occurred at trial:
 {¶ 56} "Ms. Burkett: Just to note on the record, Your Honor, that I questioned the Court prior to coming in here about having an arm band removed from Mr. Tackett as it is quite apparent the way he's dressed here today. I understand the Court has already ruled on that but I wanted to get it on the record.
 {¶ 57} "The Court: What's your position there, Mr. Mallett?
 {¶ 58} "Mr. Mallett: Your Honor, I don't believe it's overly prejudicial. I would agree with the Court's assessment.
 {¶ 59} "The Court: You can't see what color it is. It just looks like it's an Ace bandage or something on there. I didn't notice it in yesterday's shirt, and I'm not sure you can tell really what it is.
 {¶ 60} "Ms. Burkett: Well, it's not really an Ace bandage, Your Honor, because it's pretty thick. You can tell there's something but —
 {¶ 61} "The Court: Based on Mr. Tackett's, you know, prior criminal history of escape and his charge here, I don't think it's safe for him not to have the stun belt on here today. If there's any other way that can be accommodated through him wearing any other clothing, that's fine. It is covered up. I'm open to another suggestion if you have any.
 {¶ 62} "Actually, when he's in the witness chair, since it's his right arm, he can put his right arm next to the bench and below the rail of the witness chair, so it's not going to be overly obtrusive.
 {¶ 63} "Do you have any other suggestions?
 {¶ 64} "Defendant: May I say something?
 {¶ 65} "The Court: No. Ms. Burkett gets to speak for you.
 {¶ 66} "Ms. Burkett: Could I have just one moment, Your Honor?
 {¶ 67} "The Court: Sure.
 {¶ 68} "Ms. Burkett: All right. Your Honor, short of going out and buying a new shirt, I don't know what else I can do. I don't want to have him dressed in the same clothing he was in yesterday, so we'll accept the Court's ruling, but on the record I would object.
 {¶ 69} "Ms. Burkett: Unless the Court wants to give me time to go out and get a new shirt.
 {¶ 70} "The Court: Well, you certainly had ample time. He has other clothing. But the time to start is now. It's time to go."
 {¶ 71} Tr. at 266-268.
 {¶ 72} Upon review of the record, the trial court considered appellant's prior criminal history and the serious offense of violence with which appellant was charged, and did not abuse its discretion in requiring appellant to wear the armbands. It appears to be mere speculation the purpose of the armbands, even if physically visible, would be obvious to the jury.
 {¶ 73} The second assignment of error is overruled.
 III {¶ 74} In his third assignment of error, appellant maintains his conviction is against the manifest weight of the evidence.
 {¶ 75} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also State v. Thompkins,78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 76} Appellant was charged with felonious assault, in violation of R.C. 2903.11(A)(1):
 {¶ 77} "(A) No person shall knowingly do either of the following:
 {¶ 78} "(1 ) Cause serious physical harm to another or to another's unborn;"
 {¶ 79} Upon review of the record, several witnesses testified they witnessed appellant attack the victim and cause her serious physical harm. The witnesses and the victim identified appellant in court as the attacker. Accordingly, the jury had sufficient credible evidence upon which to base its decision, and the weight of the evidence and the credibility of the witnesses are within the discretion of the trier of fact.
 {¶ 80} The third assignment of error is overruled.
 {¶ 81} Appellant's conviction in the Licking County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's conviction in the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.