OPINION *Page 2 
{¶ 1} On July 19, 2007, appellee, the Licking County Department of Job and Family Services, filed an ex parte request for temporary custody of J. E. born August 17, 2001, T. E. born April 27, 2004, and K. E. born April 11, 2006. Mother of the children is appellant, Sabrina Estep; father is Allen Estep. Appellee had been involved with the family under a prior protective supervision order. By judgment entry filed July 20, 2007, the trial court granted temporary custody of the children to appellee.
 {¶ 2} On July 20, 2007, appellee filed three motions for temporary custody, alleging each child to be dependent (Case Nos. F2007-0520, F2007-0521, and F2007-0522). A hearing was held on October 2, 2007. By judgment entry filed same date, the children were found to be dependent and were to remain in appellee's temporary custody. Thereafter, a case plan was filed.
 {¶ 3} On February 29, 2008, appellee filed motions for permanent custody based upon the parents' failure to comply with the case plan. A hearing before a magistrate was held on May 23, 2008. By decision filed June 23, 2008, the magistrate recommended permanent custody of the children to appellee. The trial court approved and adopted the decision on same date.
 {¶ 4} On August 8, 2008, appellant filed a motion for leave to file objections to the magistrate's decision. By judgment entry filed August 12, 2008, the trial court denied the motion.
 {¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows: *Page 3 
 I {¶ 6} "THE TRIAL COURT COMMITTED HARMFUL ERROR WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO FILE UNTIMELY OBJECTIONS TO THE MAGISTRATE'S DECISION."
 II {¶ 7} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT GRANTED PERMANENT CUSTODY OF THE ESTEP CHILDREN TO THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES."
 III {¶ 8} "THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO THE FAILURE OF COUNSEL BELOW TO OBJECT TO THE MAGISTRATE'S DECISION GRANTING PERMANENT CUSTODY OF HER CHILDREN TO LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES, CHILDREN'S SERVICES DIVISION."
 I, II, III {¶ 9} Appellant claims the trial court erred in refusing to review her untimely objections, the trial court committed plain error in granting the motions for permanent custody, and her trial court counsel was ineffective for failing to object to the magistrate's findings. Because these issues require an analysis of the evidence under the plain error doctrine and the mandates of Strickland v. Washington (1984),466 U.S. 668, they will be addressed collectively.
 {¶ 10} In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for *Page 4 
the error. State v. Long (1978), 53 Ohio St.2d 91; Crim. R. 52(B). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus.
 {¶ 11} The standard for ineffective assistance of counsel is set out in State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 12} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 13} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 14} Juv. R. 40, which parallels Civ. R. 53, governs magistrates. Subsection (D)(3)(b)(i) states the following:
 {¶ 15} "Time for filing. A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Juv. R. 40(D)(4)(e)(i). * * *"
 {¶ 16} In the event of a late filing of objections, Juv. R. 40(D)(5) provides the following: *Page 5 
 {¶ 17} "Extension of time. For good cause shown, the court shall allow a reasonable extension of time for a party to file a motion to set aside a magistrate's order or file objections to a magistrate's decision. `Good cause' includes, but is not limited to, a failure by the clerk to timely serve the party seeking the extension with the magistrate's order or decision."
 {¶ 18} The magistrate's hearing on permanent custody was held on May 23, 2008. Both parents and their legal counsel were present. The magistrate's decision was filed on June 23, 2008. On same date, the trial court approved and adopted the magistrate's decision. On August 8, 2008, appellant, through her newly appointed counsel, requested the right to file late objections. Said motion was denied on August 12, 2008. We note the magistrate's decision and the trial court's judgment entry approving and adopting the decision both contained notices to the parents explaining their respective rights to file objections to the magistrate's decision.
 {¶ 19} A review of the record does not demonstrate any "good cause" as to why appellant did not file her objections in a timely manner. We find the trial court did not err in failing to consider appellant's untimely objections.
 {¶ 20} Appellant argues the trial court's decision to grant permanent custody of the children to appellee constituted plain error. We note permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." In reSmith (1991), 77 Ohio App.3d 1, 16. "Out of respect for maintaining the natural parental relationship, the Ohio Legislature requires that this relationship cannot be judicially terminated unless the termination is supported by the highest civil evidentiary standard — clear and convincing evidence." In re Williams, *Page 6 
Geauga App. Nos. 2003-G-2498 2003-G-2499, 2003-Ohio-3550, ¶ 35. "Clear and convincing evidence" is defined as evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 21} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 22} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 23} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents *Page 7 
for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 24} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 25} "(16) Any other factor the court considers relevant."
 {¶ 26} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 27} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 28} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 29} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; *Page 8 
 {¶ 30} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 31} "(5) Whether any of the factors in divisions (E)(7) to (11) apply in relation to the parents and child."
 {¶ 32} The magistrate's decision, as approved and adopted by the trial court, included the following findings:
 {¶ 33} "1. The three Estep children were removed from the custody of their parents on July 19, 2007, and placed into the shelter care of Children's Services pending adjudication. On October 3, the children were adjudicated dependent at an uncontested hearing, and ordered placed in the temporary custody of Children's Services. At that time, the situation was that Mr. Estep was unemployed, living with a relative, and simply unable to be a full-time parent. Ms. Estep was having difficulty maintaining a safe and clean home for herself and the children, was having financial difficulties, was having difficulty supervising the children, and also had difficulty addressing the special needs of the children. This was all despite the fact that Ms. Estep had been provided supportive services for some period of time, including homemaking assistance. A Case Plan addressing these issues was ordered by the Magistrate as a part of that dispositional hearing.
 {¶ 34} "2. Ms. Estep has made some progress on the terms of the case plan. She maintains an apartment. She is employed at this time. She has attended visits with the children, which for the most part have been without major incident. And, Ms. *Page 9 
Estep participated in parenting classes on her own through Heartbeats of Licking County.
 {¶ 35} "3. Having recognized that Ms. Estep has made some efforts on the Case Plan objectives, it is key to note that the situation has not been without difficulties. The apartment Ms. Estep maintains is not a clean and safe environment for the children. Alma Lease, the Homemaking Aide for Children's Services, testified that she has made efforts for years, not just during the pendency of this case, to get Ms. Estep to maintain a safe and clean home, and yet in this latest home she still found the home conditions to be poor throughout the case. Ms. Lease testified that Ms. Estep has developed a trend of letting others simply move in with her, including friends, family members, and most concerning, men who she doesn't know at all, knowing only their first name. The back door of the apartment does not lock, and has not locked for months, which has resulted in people, including strangers, coming and going in her apartment as they see fit. Ms. Estep even found a strange man in her home once in the middle of the night. Ms. Lease said that the numerous pets have left fecal matter on the floor, and contributed to the overall poor condition of the home.
 {¶ 36} "4. Ms. Estep is having difficulty making ends meet financially, despite working a fulltime job. The problem is that Ms. Estep makes poor choices with respect to her finances. She will buy food to supply her home, but then allows all of the people coming in and out of her home to eat all of this food. This leaves her with empty cupboards and no money to restock her supplies. When asked, Ms. Estep indicated she can rely on the food pantry and other charitable groups to help her make it through the month. This is frankly a poor plan. And, while struggling to make ends meet, Ms. *Page 10 
Estep has brought several pets into her home, including a dog, two cats, and a snake, further increasing the burden on herself in terms of expenses, as she must now buy food for these animals."
 {¶ 37} During closing argument, appellant's trial counsel argued appellant's inability to fulfill the case plan was affected by her inability to perceive what was needed, and she should have been afforded special mental health counseling apart from "Heartbeats" and "One, Two, Three Magic." T. at 213-215. Appellant's counsel further expressed the opinion that the permanent custody motion was filed too quickly, and appellant should be afforded a six month extension. Id. Appellant had testified she could correct any problems and she would do anything required of her, including counseling, if she had a six month extension. T. at 196. We note the matter commenced in July of 2007, and the hearing was held on May 23, 2008, less than one year.
 {¶ 38} We have examined all of the testimony under the plain error standard and the dictates of Bradley and Strickland cited supra, and find the facts as found by the magistrate to be supported in the record.
 {¶ 39} Appellant acquired a new residence and secured a job. T. at 43-44, 51-52. However, rent consumes all but $200.00 of her spendable income. T. at 52, 55. Because of her apparent lack of judgment, appellant permits strangers to live in her residence, and they take advantage of her. T. at 90-91, 120. One caseworker termed appellant's residence as "a home with a revolving door." Id. She has had to obtain food from the local food pantry, mainly in part because the visitors to her residence consume everything. T. at 55-58, 98. Appellant was on probation at work because she was *Page 11 
"[u]nder stress and whatnot, and they just wanted me to improve." T. at 54. If she doesn't improve, she will "probably get fired." Id. The home conditions were marginal. The conditions included animal feces on the floors, piles of dirty dishes in the sink, unlockable doors and people wandering in and out creating a dangerous environment for the children, inadequate bedding for the children, and no toys or clothes for the children. T. at 90, 92, 93-94, 104, 119-120, 125, 149.
 {¶ 40} Appellant testified she would not longer permit anyone to stay in her residence in the future. T. at 185-186. She stated her home was cleaner, but she had to get "[j]ust a little bit more organized" which she anticipated she would accomplish in the near future. T. at 186-187. She would supervise them better, making sure "they're with me at all times." T. at 187. This statement demonstrates her lack of understanding of her children's needs. The youngest child has numerous health issues, including a muscular disorder, requiring multiple appointments for speech, physical, and occupational therapy, as well as with a feeding clinic and MMRD. T. at 68-73. The middle child appears to be lost in the shuffle between her siblings, and has been experiencing temper tantrums. T. at 23, 126. The oldest child needs medication and treatment for ADHD and is behind in school. T. at 109. He falls under the "autism spectrum." Id. When first removed, he was aggressive and very oppositional, but has since improved in foster placement. T. at 108, 110-111. Despite these very serious issues, appellant believes she can work and still be with her children and meet their needs. Appellant does not have a driver's license, phone or babysitter. T. at 40, 119-120, 149.
 {¶ 41} Father did not contest the matter. T. at 123-124. *Page 12 
 {¶ 42} There has been significant progress by the children in their respective placements. T. at 74, 110-112, 125-129.
 {¶ 43} From our review of the record, we find the magistrate's conclusions, approved and adopted by the trial court, to be supported by clear and convincing evidence in the record.
 {¶ 44} There is no evidence to establish that filing objections would have resulted in different conclusions other than the ones reached by the magistrate and the trial court.
 {¶ 45} Assignments of Error I, II, and III are denied.
 {¶ 46} The judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division, is hereby affirmed.
 Farmer, P.J., Edwards, J., and Delaney, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division, is affirmed. *Page 1