[Cite as *State v. Tate*, 2026-Ohio-1636.]

## IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. CT2025-0108 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas, Case No. CR2025-0504 |
| JASON TATE | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry:  May 5, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; Craig R. Baldwin, Judges

**APPEARANCES:** JOSEPH A. PALMER, for Plaintiff-Appellee; CHRIS BRIGDON, for Defendant-Appellant.

*King, P.J.*

{¶ 1}   Defendant-Appellant Jason Tate appeals the October 3, 2025 decision of conviction and sentence of the Muskingum County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

Facts and Procedural History

{¶ 2}   Detective Matt Wilhite of the Muskingum County Sheriff's Department is assigned to the Central Ohio Drug Enforcement Task Force (CODE). In early April of 2025, a confidential informant (CI) advised Wilhite that Tate sold large quantities of cocaine and that they could obtain cocaine from Tate. Based on information provided by the CI, and Wilhite's prior knowledge of Tate, on April 17, 2025 Wilhite had the CI perform a controlled buy. The CI was fitted with audio and video recording devices and a

GPS tracker was placed on their car. Before proceeding to Tate's home, in Wilhite's presence the CI negotiated a deal with Tate via Snapchat messaging to purchase $2600 worth of cocaine. Wilhite took photos of the conversation. The CI remained under surveillance during the buy. After making the buy, the CI returned to Detective Wilhite and Wilhite took possession of the drugs. The CI identified Tate in the video of the cocaine purchase by the unique clothing Tate was wearing.

{¶ 3} On May 12, 2025, based on the controlled buy, Wihite requested and executed a search warrant for Tate's home. The warrant sought cell phones, memory cards, cash, evidence of occupancy, financial records, tax records, clothing matching what Tate was wearing during the controlled buy, and digital media stored in Tate's security cameras.

{¶ 4} Tate was present when CODE officers arrived and was removed from the home before the search. Officers located a large amount of cash in a Crown Royal bag hidden in a heat register beside the chair Tate was sitting in during the controlled buy and documents connecting Tate to the property. In another heat register officers found a large amount of cocaine. The search was immediately stopped while Wilhite obtained a second search warrant for drugs and Tate's vehicle. Additional drugs and weapons were discovered. A later search warrant was obtained and executed for Tate's phone.

{¶ 5} On May 22, 2025, the Muskingum County Grand Jury returned an indictment charging Tate with two counts of trafficking in cocaine and two counts of possession of cocaine, felonies of the first degree. Each count contained major drug offender and firearm specifications. Tate was additionally charged with one count each of possession and trafficking in methamphetamine, felonies of the first degree, with attendant firearm specifications. Tate was further charged with five counts of having

weapons under disability, a felony of the third degree, and one count of receiving stolen property, a felony of the fourth degree.

{¶ 6}   In early July, the State extended a plea offer with an agreement to a 20-year sentence. Because counsel for Tate had not yet received full discovery, she did not feel she could intelligently discuss the plea offer with Tate. On July 31, 2025, the State withdrew the offer and filed a superseding indictment again charging Tate with all of the foregoing, but adding an additional count of trafficking in cocaine, a felony of the first degree for the controlled buy. The count also included a major drug offender specification and a firearm specification.

{¶ 7}   Counsel for Tate requested discovery. The State provided some discovery, but filed a certification of nondisclosure pursuant to Crim.R. 16(D) which listed photos, a statement, three videos, the CI packet, and the search warrants and supporting documents in their entirety as items it would not disclose until 7 days before trial as provided by the rule. Counsel for Tate therefore filed motions to suppress without first seeing the search warrants in their entirety, the search warrant affidavits, or knowledge of the identity of the CI. Counsel received full discovery 5 days before the suppression hearing held on September 24, 2025.

{¶ 8}   During the suppression hearing, counsel for Tate argued the search warrant was stale and lacked particularity, asserted a *Franks* challenge alleging insufficient information in the supporting affidavit, argued officers exceeded the scope of the search warrant, and that the State's nondisclosure of evidence until seven days before trial created constitutional violations. Counsel additionally argued that the State withdrew its 20-year offer and filed a superseding indictment because she continued to request discovery materials that the State had declared protected pursuant to Crim.R. 16(D).

After hearing testimony from Wilhite and argument from both parties, the trial court denied the motion to suppress.

{¶ 9}   The same day, Tate entered pleas of no contest to two counts of trafficking in cocaine, felonies of the first degree with attendant major drug offender specifications and forfeiture specifications; one count of trafficking in methamphetamine, a felony of the first degree with attendant firearm and forfeiture specifications, and five counts of having weapons under disability, felonies of the third degree. The State dismissed the balance of the indictment. On October 1, 2025, the trial court sentenced Tate to an indefinite sentence of 23 to 28.5 years of incarceration.

{¶ 10} Tate filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 11} "TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY PURSUING MERITLESS SUPPRESSION LITIGATION, MISAPPLYING CRIM.R. 16(D)(3), AND FAILING TO ADVISE THE DEFENDANT TO ACCEPT A FAVORABLE PLEA OFFER, RESULTING IN THE WITHDRAWAL OF A TWENTY-YEAR AGREEMENT AND THE IMPOSTON OF A SUBSTANTIALLY HARSHER SENTENCE."

{¶ 12}  In his sole assignment of error, Tate argues his counsel rendered ineffective assistance. We disagree.

Applicable Law

{¶ 13} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the

result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

Suppression Claims

{¶ 14} Tate first faults his trial counsel for filing a suppression motion that "lacked any legal or factual foundation." Brief of Appellant at 9. Tate attacks counsel's arguments that the May 9, 2024 warrant was "stale" because the controlled buy had taken place three weeks earlier, that areas searched by law enforcement were not reasonably within the boundaries of the warrant, and that counsel did not advance any allegation of falsehood in the warrant affidavit to support a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154.

{¶ 15} Tate does not suggest any suppression avenue that may have had a reasonable chance of success, nor does he cite to any authority that would lead us to a conclusion that filing a motion to suppress that is ultimately unsuccessful constitutes ineffective assistance. It is well settled that tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his or her client. See *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶ 16} Under the facts of this case, we note counsel for Tate was faced with overwhelming evidence against her client yet appears to have explored every available

avenue to diligently represent her client. We therefore find no fault in counsel's decision to file a motion to suppress that was ultimately unsuccessful.

## Discovery and Plea Offer

{¶ 17} Tate next faults his counsel for misunderstanding discovery rules which according to Tate resulted in the State's withdrawal of the 20-year plea offer, Tate argues that but for counsel's misunderstanding there is a reasonable probability he would have accepted the State's plea offer.

{¶ 18} In support of his argument, Tate cites *Lafler v. Cooper*, 566 U.S. 156. As noted by the State, in *Lafler*, the parties stipulated to counsel's deficient performance. Thus, the *Lafler* court examined only the prejudice prong of the *Strickland* rule. In the context of a plea offer, the Court set forth the following requirement:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

{¶ 19} *Id.*, 164.

{¶ 20} Even if we were to assume arguendo that counsel's performance fell below an objective standard of reasonable representation, Tate has not demonstrated the outcome would have been different. During the sentencing hearing counsel again argued that discovery was not provided to the defense in time for either counsel or Tate to make an educated decision regarding the State's plea offer before the State withdrew the offer. The trial court responded:

> I do understand, [Counsel for the Defense], the situation you were in with discovery, and I assure you there is no penalty for waiting to the end for the plea. And I understand the State's argument also, but I just want to assure you.

{¶ 21} Transcript of Sentencing (TS), October 1, 2025 at 16.

{¶ 22} The trial court then went on to discuss Tate's considerable prior criminal history involving drug and weapons charges, the fact that the instant matter involved additional drug and weapons charges, and the danger that Tate presented to the community before sentencing Tate to a period of incarceration three years greater than that originally offered by the State. TS 17-19. There is, therefore, no evidence in the record that the trial court would have accepted the terms of the plea agreement, nor that it would have imposed a more lenient sentence. Moreover, when asked, Tate stated he was satisfied with the advice and assistance of counsel. Transcript of plea hearing at 15.

{¶ 23} Having found no ineffective assistance of trial counsel, we deny Tate's sole assignment of error.

{¶ 24} For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed.

{¶ 25} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Baldwin, J. concur.